In the Matter of VERNON A. MORHOUS, as Warden of Great Meadow Prison, Appellant, against SUPREME COURT OF THE STATE OF NEW YORK, Particularly Any Trial or Special Term in and for Washington County, et al., Respondents.

Argued April 18, 1944; decided June 14, 1944.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd and Henry S. Manley of counsel), for appellant.* Habeas corpus is not the appropriate remedy for the alleged wrongs of the respondent Whitman. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Landers* v. *Staten Island R. R. Co.,* 14 Abb. Pr. N. S. 346; *People ex rel. Tweed* v. *Liscomb,* 3 Hun 760, 60 N. Y. 559; *Matter of Bates,* 125 Pac. 2d 1017; *Matter of Corrina* v. *De Barbieri,* 247 N. Y. 357; *People ex rel. Smith* v. *Morhous,* 43 N. Y. S. 2d 229; *People ex rel. Hubert* v. *Kaiser,* 206 N. Y. 46; *People ex rel. Carr* v. *Martin,* 286 N. Y. 27.)

*Charles E. Hughes, Jr., Curtiss E. Frank* and *Barbara Coxe* for R. Gordon Whitman, respondent. Habeas corpus is the proper remedy for the violations of constitutional right alleged in Whitman's petition, and the Supreme Court, Washington County, has jurisdiction to make a determination on the merits. The procedure *coram nobis,* even if available here, is not the exclusive remedy. (*Mooney* v. *Holohan,* 294 U. S. 103; *Pyle* v. *Kansas,* 317 U. S. 213; *Moore* v. *Dempsey,* 261 U. S. 86; *Smith* v. *O'Grady,* 312 U. S. 329; *Cochran* v. *Kansas,* 316 U. S. 255; *People ex rel. Shapiro* v. *Keeper of City Prison,* 290 N. Y. 393; *Hoff* v. *State of New York,* 279 N. Y. 490; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *People ex rel. Battista* v. *Christian,* 249 N. Y. 314; *People ex rel. Moore* v. *Hunt,* 258 App. Div. 24; *People ex rel. Meyer* v. *Warden,* 269 N. Y. 426; *Jacobowitz* v. *Herson,* 268 N. Y. 130; *Lisenba* v. *California,* 314 U. S. 219; *Chambers* v. *Florida,* 309 U. S. 227.)

LEHMAN, Ch. J. The respondent R. Gordon Whitman is imprisoned in Great Meadow prison under a sentence imposed by the Court of General Sessions in New York County in 1931 after he had been convicted in that court of the crime of manslaughter in the first degree. In 1941 he applied for a writ of

habeas corpus, alleging in his petition that his conviction was obtained by perjured testimony knowingly used by the prosecution; that testimony in his favor was suppressed by the prosecution; and that newspaper articles containing the malicious falsehood that he had previously murdered an officer of the law in West Virginia were maliciously used at the trial. The judgment of conviction, alleged to have been obtained by such means, deprives the defendant, it is said, of his liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

At the hearing upon the writ, the court at Special Term dismissed the writ without giving the relator opportunity to prove the truth of his allegations. The Appellate Division unanimously affirmed the order dismissing the writ. (*People ex rel. Whitman* v. *Wilson*, 263 App. Div. 908.) The relator applied for permission to appeal to this court in accordance with the provisions of section 589 of the Civil Practice Act. Permission was denied. If the construction of the Constitution of the State or of the United States was directly involved, an appeal would lie as of right. (Civ. Prac. Act, § 588.) The denial by this court of permission to appeal was not " upon the ground that the appeal would lie as of right " as provided in section 592 of the Civil Practice Act. Thereafter the Supreme Court of the United States granted an application for certiorari (317 U. S. 615). When it appeared that the petitioner had filed a notice of appeal to this court as of right and that no order had been entered dismissing that appeal, counsel were advised by the Clerk of the Supreme Court of the United States that they " are requested to submit a memorandum with respect to the jurisdiction of this Court in the light of New York practice, and to state their views, on the questions (1) whether an appeal as of right was taken by the filing of the notice of appeal, (2) if so, whether this appeal as of right was abandoned, was disposed of by the order of the Court of Appeals, or is still pending. Compare *Morris Plan Bank* v. *Graves*, 314 U. S. 572." To remove doubt whether there had been a final determination by this court that the relator could not by writ of habeas corpus challenge the validity of the sentence of imprisonment, this court on April 7, 1943, upon its own motion entered an order which provides in part as follows: " it appearing * * * that the case is one where

appellant is not entitled to a writ of habeas corpus under section 1231 of the Civil Practice Act; and that an appeal from the order entered upon the decision of the Appellate Division taken by the appellant as of right must be dismissed; * * * Ordered, that said appeal be and the same hereby is dismissed.'' (See 290 N. Y. 670.)

The requirement of due process of law guaranteed by the Constitution of the United States and by the Constitution of this State '' cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.'' A State may not deny '' to its court jurisdiction to redress the prohibited wrong upon a proper showing in an appropriate proceeding for that purpose.'' (*Mooney* v. *Holohan,* 294 U. S. 103, 112, 113.) It is not now disputed that the allegations of the petition of the respondent Whitman upon his application for a writ of habeas corpus '' sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody.'' (*Pyle* v. *Kansas,* 317 U. S. 213, 216.) An appeal from the order dismissing the writ of habeas corpus presents primarily the question whether the writ of habeas corpus is available for the purpose of invoking the power of the court to inquire whether the petitioner is deprived of his liberty without due process of law under a judgment of conviction '' contrived * * * through the pretense of a trial ''. The mandate of the Constitution of the United States that no *State* shall deprive a person of his liberty without due process of law is unheeded by a State only where it has denied to its courts jurisdiction to inquire whether '' through its legislature, through its courts or through its executive * * * officers '' a person has been wrongfully deprived of his liberty, or where a court having '' jurisdiction to redress the prohibited wrong '' fails to accord to the injured person the remedy to which he is entitled. An injured person must avail himself of other appropriate '' corrective judicial process to remedy the alleged wrong '' if under the law of the State the writ of habeas corpus

is not available for that purpose. (*Mooney* v. *Holohan, supra; Frank* v. *Mangum,* 237 U. S. 309.)

The writ of habeas corpus is the traditional process devised centuries ago to safeguard the rights of persons, deprived of liberty, to challenge *in the courts* the legality of their detention. (*Hoff* v. *State of New York,* 279 N. Y. 490.) The Legislature has provided that a person is not entitled to a writ of habeas corpus " where he   *   *   *   is detained by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction ". (Civ. Prac. Act, § 1231.) The express statutory limitation was not intended to abridge the privilege of the writ of habeas corpus. Indeed, the Legislature had, under the Constitution of the State, no power to do that. The statute merely formulates the limitation which had generally been applied by the court of Kings Bench in England and by the courts of America. " Upon a return to a habeas corpus that the prisoner is detained under a conviction and sentence by a court having jurisdiction of the cause, the general rule is, that he will be instantly remanded." (*Ex parte Siebold,* 100 U. S. 371.)

The Court of General Sessions had, it is undisputed, jurisdiction of the person of the petitioner and jurisdiction of the offense with which he was charged. It was therefore a competent court to try the charge and to sentence the defendant if convicted. Imprisonment under a judgment rendered by a court which had jurisdiction to try the charge is not unlawful if measured solely by common-law rules and standards. " An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not nullity if the Court has general jurisdiction of the subject, although it should be erroneous." (*Ex Parte Tobias Watkins,* 3 Pet. [U. S.] 193, 203.) Doubtless that common-law principle does not apply in full force where a court of competent jurisdiction has failed in the course of a trial to observe the requirements of due process. In such case imprisonment, though under a judgment of a court which has general jurisdiction of the subject, is unlawful, and the person imprisoned is deprived of his liberty by the State without due process if he cannot *find a remedy in an appropriate proceeding in a court of competent jurisdiction.*

Though " in no case has a writ of habeas corpus been sus‑ tained by this court where imprisonment is under a final judg‑ ment of imprisonment by a court having jurisdiction of the person of the accused and general jurisdiction of criminal offenses " (*People ex rel. Carr* v. *Martin,* 286 N. Y. 27, 36), yet until our recent decision in *Matter of Lyons* v. *Goldstein* (290 N. Y. 19), this court had not been called upon to determine whether a person imprisoned under a judgment of a competent court obtained after a trial which does not satisfy the require‑ ments of due process, can obtain his release upon a proper showing in some other appropriate proceeding. At common law a court of competent jurisdiction had power by writ of error *coram nobis* to set aside its own judgment where it appeared that the judgment complained of could not have been entered if the facts upon which the error is predicated had been pre‑ sented in the trial court. (*Robinson* v. *Johnston,* 118 F. 2d 998.) Analogous jurisdiction to set aside upon motion a judgment obtained by fraud and misrepresentation is undoubtedly inher‑ ent in the courts of general civil jurisdiction of this State. Ques‑ tion remained whether similar jurisdiction was limited or with‑ held by the Legislature from courts exercising criminal juris‑ diction. In *Matter of Lyons* v. *Goldstein* (*supra*), that question was authoritatively decided by a closely divided court. We held that a court of criminal jurisdiction has inherent power to set aside upon motion its own judgment based upon fraud or misrepresentation *of an officer of the State* depriving a defend‑ ant of due process, even though no such power is expressly conferred by the Code of Criminal Procedure; and that limita‑ tions contained in the Code, relating to other motions affecting a judgment, do not apply in such case. (Cf. *Robinson* v. *John‑ son, supra.*) It is hardly open to question that in accordance with the principles formulated in the opinion in *Matter of Lyons* v. *Goldstein* (*supra*), and authoritatively established by the decision in that case, a motion by the relator in the Court of General Sessions to vacate the judgment of conviction of that court would be an appropriate proceeding in which remedy for the alleged wrong could be obtained upon proof of the truth of the allegations of the petition.

The decision of this court in *Matter of Lyons* v. *Goldstein* was rendered after the Supreme Court of the United States

had heard oral argument in *N. Y. ex rel. Whitman* v. *Wilson*. Our decision was brought to the attention of that court and is discussed in its opinion (318 U. S. 688). The Supreme Court expressed no doubt that under authority of *Lyons* v. *Goldstein* the petitioner could obtain a remedy for the alleged wrong, but it pointed out that this court did not in the opinion " expressly consider    *    *    *    whether, under New York practice, habeas corpus may be used as either an alternative or a cumulative remedy in such case." Of course if habeas corpus was under New York practice an available remedy, the State courts erred in *People ex rel. Whitman* v. *Wilson* in denying to the petitioner opportunity to show that he was entitled to release from unlawful imprisonment, even though an alternative remedy may also be available. For that reason the Supreme Court said that: " In view of the changed situation resulting from the decision in *Lyons* v. *Goldstein* after we granted certiorari, we think it appropriate to vacate the judgment and to remand the cause to the state court for its determination in the light of that decision, and for such further or other proceedings as may be deemed advisable."

After the habeas corpus proceeding was remanded to the Supreme Court of this State, Vernon A. Morhous was substituted for his predecessor warden, the original respondent, and a motion made in his behalf to dismiss the writ of habeas corpus was denied. Then he applied in the Appellate Division for an order prohibiting the Supreme Court of the State of New York " from proceeding to trial or adjudication of issues of fact now arising or hereafter to arise upon the petition and return and other pleadings " in the habeas corpus proceeding. The application presented the question whether the relator is entitled by a writ of habeas corpus to challenge the validity of the judgment of conviction under which he is confined. His application for an order of prohibition was denied " as a matter of law and not in the exercise of discretion," the court in a unanimous decision saying that: " We are convinced that *coram nobis,* even if available here, is not the exclusive remedy for imprisonment in violation of constitutional rights, and that the ancient right of habeas corpus is an appropriate remedy." We cannot agree with the conclusion that under the law and

practice of this State, a person imprisoned under a final judgment of a court which had jurisdiction of the person and general jurisdiction to try the charge and which had not exceeded its jurisdiction, has ever been entitled to a writ of habeas corpus, though the judgment was obtained by fraud or deception or the trial was conducted in manner which failed to satisfy the constitutional requirement of due process.

Reliance is placed by the relator Whitman on what was said and decided by this court in *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559). In that case the relator was imprisoned under a judgment of the Court of Oyer and Terminer held in and for the city and county of New York, rendered after a trial upon an indictment containing 220 separate and distinct counts, each charging a misdemeanor. He was sentenced upon twelve of the counts to twelve successive terms of imprisonment of one year each and to fines of $250 each, and upon other counts to additional fines amounting in all to $12,500. After the relator had served one year and had paid a fine of $250 he applied for a writ of habeas corpus. The writ was sustained and the relator was discharged on the ground that no statute conferred upon the court power to impose cumulative sentences upon the trial of a single indictment for separate misdemeanors.

That case has been recognized as a landmark in the history of the use of the writ of habeas corpus as appropriate process to inquire into the legality of a person's imprisonment even where a person is imprisoned under a judgment of a court of general jurisdiction. It vindicated the right but limited the inquiry to a narrow field. "To bar the applicant from a discharge from arrest by virtue of a judgment or decree, or an execution thereon, the court in which the judgment or decree is given must have had jurisdiction to render *such judgment*. The tribunal must be competent to render the judgment *under some circumstances*." (Italics are new.) That is the test which this court has consistently applied. (See *People ex rel. Carr* v. *Martin, supra.*) It accords with the historic nature and object of the writ, yet does not exceed those limitations upon its use which have been observed for centuries. "Upon the writ of habeas corpus, the court could not go behind the judgment, but upon the whole record, the question was whether the judgment

was warranted by law, and within the jurisdiction of the court.'' That conclusion leaves untouched '' the potency and efficiency of the writ of habeas corpus to test the jurisdiction of every court in the land, assuming, by its judgments, decrees and process, to deprive the citizen of his liberty ''.

What we have said is, of course, intended to apply only to the scope of the inquiry upon a writ of habeas corpus at common law, and under the practice in this State. Its scope in the courts of the United States has been extended by the Constitution and statutes as authoritatively construed by the Supreme Court of the United States. In those courts the common-law limitation does not apply that '' where a prisoner is held under a judgment of conviction passed by a court having jurisdiction  *  *  *  habeas corpus is not an available remedy, save for want of jurisdiction appearing upon the face of the record of the court wherein he was convicted.'' '' The rule at the common law, and under the act of 31 Car. II c. 2  *  *  * seems to have been that a showing in the return to a writ of habeas corpus  *  *  *  based upon a judgment or decree of a court of competent jurisdiction, closed the inquiry. So it was held, under the judiciary act of 1789 (ch. 20, § 14, 1 Stat. 73, 81), in *Ex parte Watkins,* 3 Pet. 193, 202.  *  *  *  But when Congress in the act of February 5, 1867 (Ch. 28, 14 Stat. 385) extended the writ of habeas corpus to all cases of persons restrained of their liberty in violation of the Constitution or a law or treaty of the United States, procedural regulations were included, now found in Rev. Stat., §§ 754–761.  *  *  * The effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the cause of his detention, and the court, upon determining the actual facts, is to ' dispose of the party as law and justice require.' '' (*Frank* v. *Mangum,* 237 U. S. 309, 329–331.) No such extension has been made by Constitution, statute or judicial decision in this State.

It may be that the courts of this State would be constrained to extend the scope of the writ beyond the limitations placed upon it by ancient practice and procedure, even though that

practice and procedure has been crystallized by the statute, if a case should arise where a person restrained of his liberty under a judgment of a court of competent jurisdiction alleges in his petition facts sufficient, if established, to show that the judgment fails to satisfy the requirements of due process on grounds for which the State has provided no other corrective procedure. Denial of the writ in such case might not accord with its historic purpose and be contrary to the spirit if not the letter of the Constitution of the State as well as of the United States. That, as we have said, is not the case here, and in the history of this State no case has been presented where other corrective procedure properly applied has failed to provide a remedy.

Certainly a general rule that the judgment of a court having jurisdiction to try an accused may be challenged by writ of habeas corpus in another court upon the ground that the requirements of due process were not satisfied in all respects at the trial, would produce a chaotic situation. Often the question whether there has been a violation of constitutional rights at the trial may involve close questions of fact and law, sometimes appearing in the record, sometimes only by proof *dehors* the record. An appeal to a higher court is ordinarily the appropriate corrective process for error at the trial and appearing in the record; a motion to vacate the judgment and for a new trial is ordinarily the appropriate corrective process for defect not appearing on the record or where for any other reason an appeal would not furnish a remedy. These proceedings are open to an accused in this State. For those reasons this court denied to relator permission to appeal from the order dismissing the writ and thereafter dismissed the appeal which the relator attempted to take without permission. The relator, as we pointed out, is not entitled to a writ of habeas corpus under the provisions of section 1231 of the Civil Practice Act. Controverted questions of fact whether the relator is deprived of his liberty without due process can be determined only by a motion to vacate the judgment made in the court which granted it. The Supreme Court of this State has not jurisdiction to determine that question upon a writ of habeas corpus.

· Since the order denying the writ of prohibition expressly provides that it is made upon the law and not in the exercise of discretion, the order should be reversed and the application granted.

LOUGHRAN, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur; RIPPEY, J., taking no part.

Order reversed, etc.