THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM KENDRICKS, Defendant.

Court of General Sessions of County of New York, October 3, 1947.

*John Loehr* for plaintiff.

*Louis Kaye* for defendant.

SCHURMAN, J.  On February 21, 1945, defendant was indicted, charged in three counts with feloniously selling a narcotic drug and in the fourth count with unlawful possession.  He went to

trial and on April 24, 1945, was convicted by jury verdict on the three selling counts, the possession count not being submitted to the jury.

On June 4, 1945, after he admitted the two prior felony convictions charged in the District Attorney's information, the defendant was sentenced as a third felony offender to a term of from five to seven and one-half years in State prison on each count, the terms to run concurrently.

The conviction was obtained upon the testimony of two detectives attached to the Narcotics Squad, who testified in detail concerning their observations of the defendant's actions in consummating three sales of narcotics to an informer on three different days in January, 1945. The detectives also gave testimony of admissions made by the defendant at the time of his arrest, when he described the extent of his traffic in narcotics and indicated that he would pay weekly bribes to one of the detectives should the latter allow him to continue his illicit traffic. The only other witness was a police chemist who testified concerning the narcotic nature of the powder sold by the defendant.

The prosecution did not call the informer to the witness stand. During the trial the defense, in cross-examining Detective Cottone, asked him the name of the informer, to which question objection was made and sustained, with exception taken. At the end of the People's case defense counsel asked that a subpoena be issued for the informer " so that I can have him on the stand and cross-examine him," which request was denied, with exception taken.

No appeal was taken from the judgment of conviction. The defendant now petitions the court for a writ of error *coram nobis* to correct errors of law claimed to have been made by the trial court in his rulings regarding the informer.

The origin of the writ of *coram nobis* at common law was recently discussed by Judge STANLEY H. FULD of the Court of Appeals. In an article appearing in the *New York Law Journal* of June 5, 1947 (p. 2212), under the title, The Writ of Error Coram Nobis, Judge FULD wrote, in part: " It was conceived by the judiciary of sixteenth century England, born of the necessities of that time. Since a review by Parliament and the Exchequer was restricted exclusively to errors of law, it was essential to devise some means of correcting the occasional injustice resulting from errors of fact being committed in the Court of Kings Bench. The remedy devised was the writ of error '. *quae coram nobis residant,*' which means ' let the record

and proceedings remain before us.' Issued out of chancery in the king's name, the writ was directed to the judges of the court rendering judgment in civil suits to bring to their attention some error of fact dehors the record. It càst no reflection upon either the competency or the findings of the court. Rather, it served only to call up facts unknown to the court at the time of judgment — facts which affected the validity and regularity of the decision itself, facts which, if known, would have precluded the judgment rendered. The first reference to the writ that I have come upon is in the year 1553, in FitzHerbert's Natura Brevium. There the author notes its use for the correction of clerical errors in the record. A century later Rolle's Abridgement and Tidd's Practice apprise us that the writ was employed ' as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict.' Ten years later, in 1678, the decision in *Rex* v. *Cornwall* (1 Sid., 208) indicated that the writ would lie in criminal cases." Thus the main function of the writ at common law was to call to the court's attention facts outside the record, facts unknown to the court at the time of judgment, which would have changed the judgment.

Proceeding to modern times, when *Matter of Lyons* v. *Goldstein* (290 N. Y. 19, 26) was decided in 1943, we find the function of the writ again outlined by the Court of Appeals. It held that a court has inherent power to set aside a judgment procured by fraud and misrepresentation; that at common law in criminal cases the power was exercised through the writ of error *coram nobis* and that no statute denies a court " jurisdiction to reopen its judgment where the same was based upon trickery, deceit, coercion or fraud and misrepresentation in the procurement of the plea upon which the judgment was based " (see, also, *Matter of Morhous* v. *N. Y. Supreme Court*, 293 N. Y. 131).

In the present case, the alleged violation of the constitutional right appears in the trial record. To such a situation *coram nobis* does not extend. The Court of Appeals, through Judge THACHER, has so stated in *Matter of Hogan* v. *Court of General Sessions* (296 N. Y. 1), where the court, in discussing *People* v. *Gersewitz* (294 N. Y. 163), said at page 6: " This language of the late Chief Judge is certainly not to be understood as saying that any judgment procured as the result of a trial during the course of which rulings were made in violation of constitutional right may be vacated and set aside *if there was*

*a right to review such rulings on an appeal from the judgment.* Similarly, matters not presented during the trial, if presentable upon a motion for a new trial, would not be ground for setting aside the judgment years after its entry.'' (Italics supplied.)

There is no holding to the contrary in *Matter of Lyons* v. *Ward* (272 App. Div. 120), on which defendant relies.

Moreover, in the present case, there is no merit to defendant's contention that his right of confrontation was violated at the trial.

This right is expressed as follows: '' In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * * '' (U. S. Const., 6th Amendt.) '' * * * in any trial in any court whatever the party accused shall be * * * confronted with the witnesses against him.'' (N. Y. Const., art. I, § 6.) '' In all criminal prosecutions, the accused has a right * * * to be confronted with the witnesses against him * * * '' (Civil Rights Law, § 12). '' In a criminal action the defendant is entitled * * * to be confronted with the witnesses against him in the presence of the court * * *.'' (Code Crim. Pro., § 8.)

A witness is any person from whom testimony is adduced and used in a judicial proceeding. It is one who gives evidence in a cause before a court; one who attests or swears to facts or gives or bears testimony under oath.

The right of confrontation arises only when a person becomes a witness in a case. Until this event occurs no right of confrontation inures to the benefit of the accused.

Consequently, in the case at bar, the right of confrontation never arose so far as the informer was concerned. He never became a witness either in Felony Court or before the grand jury or at the trial. He was not before the court. He was not a witness within the scope of the constitutional safeguard.

The only evidence here adduced was the testimony of the detectives. This was legally sufficient. The People chose not to submit to the jury the cumulative testimony of the informer, and no right of confrontation could arise from this choice. The choice was a right inherent in any prosecution.

Defendant's motion for a writ of error *coram nobis* is in all respects denied.