THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v* LOUIS HOFFNER, Defendant.

County Court, Queens County, December 12, 1947.

*Harry G. Anderson* for defendant.

*Charles P. Sullivan,* District Attorney (*Irwin Shapiro* of counsel), for plaintiff.

DOWNS, J.   This is a motion made in behalf of the defendant herein directing that the conviction of the defendant be set aside and a new trial ordered and for such other and further relief as may be proper in the premises.

This defendant was convicted on January 17, 1941, in the County Court of Queens County of the crime of murder in the first degree. The case was tried before the Honorable KENNARD UNDERWOOD, County Judge of Cayuga County, acting in and for the county of Queens. The jury rendered a verdict of murder in the first degree and as part of its verdict recommended leniency. Defendant was sentenced to be imprisoned during his natural life. Upon the trial the defendant was represented by three thoroughly experienced trial lawyers appointed by this court to represent him. Defendant appealed from the conviction to the Appellate Division of the Second Department and the same attorneys represented the defendant upon the appeal without compensation. The Appellate Division affirmed the judgment (262 App. Div. 911). Mr. Harry G. Anderson, the deponent, volunteered his services in the Court of Appeals, which court unanimously affirmed the conviction (288 N. Y. 552).

It is absolutely unnecessary for the purposes of this motion to discuss the conditions of the room or the other surrounding conditions at the time of this murder. The witnesses who were present at the time of the murder testified at the trial. Defendant testified in his own behalf at great length. His defense was an alibi.

In the moving papers the testimony as to the identification is discussed at considerable length and reactions thereto and deductions therefrom by the moving deponent are outlined without any reference at any time to any page in the stenographer's minutes which constitute the only record of the trial before this court. Deponent's reactions and characterizations of the testimony of Halkias are also discussed without reference to any testimony contained in the minutes.

The moving deponent therein then submits that on August 19, 1947, he learned that the proceedings at the line-up at which Halkias claimed to have been able to identify the defendant were taken down stenographically and the moving deponent herein was given an opportunity by the District Attorney of Queens County to examine at his leisure and at will the minutes taken at the time of the line-up.

The conversation between Mr. Krogmann and the moving deponent herein is rather useless for the purpose of this motion.

The moving deponent states that the witness Halkias committed perjury when he swore that he only had an opportunity to look at Hoffner's full face at the line-up. The exact details as contained in the testimony may be found at pages 50, 52, 60, 73, 75, 76, 80, 209 and 210. All of these references to the stenographic minutes have been ascertained by the writing Judge herein after exhaustive research and examination and re-examination of the minutes of the trial herein.

The testimony with reference to some man from the subway, named Brancaccio, will be disclosed in an examination of the stenographic minutes of trial at pages 82, 219, 220, 221, 222 and 223.

The moving affidavit at the bottom of page 5 refers to the fact, and rather artfully, that the officers who were present at the line-up were not called to testify as to what actually took place at the line-up. As a matter of fact, an examination of the stenographic minutes of the trial will disclose that detective Woods (s.m. 85–87), detective Wrage (s.m. 89, 90, 276–278), and detective Grady (s.m. 251) were all called as witnesses upon the trial. The moving affidavit then characterizes the testimony of detective Wrage as perjured.

The moving affidavit is most revealing at pages 7 and 8 in discussing the allegations of perjury against detective Wrage and an examination of the stenographic minutes at pages 276–278 will reveal that every effort on the part of the District Attorney to show when detective Wrage spoke to Brancaccio was stopped by the persistent objections interposed by counsel for the defendant, which objections were in the end sustained by the trial court and all references to the time and place and circumstances of any conversation between detective Wrage and Brancaccio were excluded from the trial. Again I repeat this exclusion was the result of persistent objection by counsel for the defendant. A reading of page 279 of the stenographic minutes will not justify the contention of the moving deponent herein.

Exhibit B is self-explanatory and contains further details which are essentially the same as testified to on the trial, at which time Halkias definitely identified the defendant as the killer. It also reveals that witness Stotzing failed at any time either on the trial or the minutes of the line-up to identify the defendant positively as the killer.

Exhibit C contains nothing which in the opinion of this court would influence the jury in the slightest degree in reaching a verdict other than the one it did, namely a verdict of guilty. The same evidence was revealed on the trial.

I will then consider the affidavit of Brancaccio, Exhibit D, revealing that he was a porter in the subway station at Sutphin Boulevard, that he heard from a passenger there had been a shooting in a bar on Sutphin Boulevard. Some unrevealed man in the crowd stated he had seen the incident and described the gunman, and he then states he revealed to captain Renseller that he was a subway porter and that if he saw a man of the description given to him by the unknown man he would notify the police. Fifteen minutes later he returned to the subway and fifteen minutes after that he saw a man who, to his satisfaction, answered the description given to him by the unknown man. This would indicate a half hour elapsed from the time of the description given to him by the unknown man in the crowd to the time he states he saw a slinking figure along the wire partition of the subway mezzanine. This man spoke to him. He described the man, and four days later he was asked about the incident by the police. The witness failed to identify the defendant who had been picked up by the police as the man he had seen slinking through the subway. This witness, Brancaccio, was frequently mentioned throughout the entire trial of this case, especially in connection with the identification of the defendant. He was

known not only to the People, but also to the defendant and counsel for the defendant. As a matter of fact, the defendant himself spoke to this witness.

Brancaccio's name is mentioned at pages 172, 173, 174 and 176 (s.m.). These instances are specifically recalled. His name is referred to with great detail at pages 219, 220, 221, 222, 223 and 224 of the stenographic minutes. He at all times failed to identify the defendant as the one he had seen that night.

To me as the writing Judge herein his affidavit contains nothing of merit that would in the slightest degree have influenced the jury herein in finding any other verdict than guilty. It is far-fetched, unrevealing, and too remotely connected by the most attenuated line of reasoning with the defendant herein. It is absolutely immaterial and unconvincing to me in an appeal to me to indicate that I think it would have influenced the jury herein in rendering any other verdict than the verdict of guilty as rendered.

I will now discuss my contemplations of the law urged as applicable herein.

The motion under advisement is based upon the ancient writ of error *coram nobis*. This writ has been used to bring before a court a judgment previously rendered by it for the purpose of review or modification on account of some error of fact and not of law affecting the validity and regularity of the proceedings and which was not brought in issue at the trial thereof, although the Code of Criminal Procedure establishes the practice in all criminal cases and the authority for the orders and judgments of the courts (*People ex rel. Hirschberg* v. *Orange Co. Ct.*, 271 N. Y. 151). But no State can deny to its courts jurisdiction to redress violations of due process upon a proper showing in an appropriate proceeding for that purpose (*Mooney* v. *Holohan*, 294 U. S. 103).

I am aware of only three examples of lack of due process in criminal convictions for which no statutory remedy could be found that have reached the Court of Appeals. These are embraced by a plea of guilty induced by fraud or misrepresentation of the prosecutor (*Matter of Hogan* v. *N. Y. Supreme Court*, 295 N. Y. 92); conviction obtained by the use of testimony known to be perjured by the prosecutor (*Matter of Morhous* v. *Supreme Court*, 293 N. Y. 131); and failure to advise the prisoner of his right to counsel (*People* v. *Gersewitz*, 294 N. Y. 163).

In every instance above recited, fraud appears to have been the predicated cause for the relief sought. In *People* v. *Gersewitz* (*supra*, p. 167) Chief Judge LEHMAN said: " We have sanctioned

the exercise of such power by a court to correct its own record or to set aside an order or judgment which was induced by fraud or procured in violation of a constitutional right of a party. Perhaps that power can have no broader scope. No case has been presented to the court in which the court was called upon to define its exact limits, but in March, 1943, this court authoritatively decided (three judges dissenting) that a court of criminal jurisdiction has ' inherent ' power to set aside a judgment procured by fraud and misrepresentation and to permit a defendant to withdraw a plea of guilty induced by violation of his constitutional rights   *   *   *   ; and in *Matter of Morhous* v. *N. Y. Supreme Court* (293 N. Y. 131), we held that a motion to vacate a judgment procured by violation of the defendant's constitutional rights is the corrective judicial process which is authorized by the law of the State to remedy the alleged wrong to the defendant and that it adequately meets the requirement of ' due process'."

Judge THACHER in his opinion in *Matter of Hogan* v. *Court of General Sessions* (296 N. Y. 1, 6), has this to say: " This language of the late Chief Judge is certainly not to be understood as saying that any judgment procured as the result of a trial during the course of which rulings were made in violation of a constitutional right may be vacated and set aside if there was a right to review such rulings on an appeal from the judgment. Similarly, matters not presented during the trial, if presentable upon a motion for a new trial, would not be ground for setting aside the judgment years after its entry."

The grounds urged in the moving papers herein and authorities submitted to this court have been exhaustively reviewed and profoundly considered at great length. The adequacy of the identification of the defendant herein by the witness Halkias has been reveiwed by the Appellate Division and the Court of Appeals in this case. All questions of the identification and all analyses of the identification have been exhaustively reviewed and resulted in unanimous affirmance of the judgment of conviction herein by the Appellate Division, Second Department, and by the Court of Appeals of our State.

The charge of perjury herein has no foundation whatever except in the alert mind of the distinguished counsel who is moving herein for relief in behalf of this defendant. I dispel any thought of perjury by detective Wrage. There is no justification for any such charge anywhere in the record. Wrage was called to the stand twice. An effort in behalf of the District Attorney to explain the testimony of Wrage was excluded solely

and exclusively because of the insistence of counsel for defendant.

The other ground urged is the affidavit submitted of Frank Brancaccio, Exhibit D attached to the moving papers. I find nothing appealing in that affidavit that would in the slightest affect a jury and result in any different result than the finding of the verdict of guilty herein. To attempt to associate the man seen by Brancaccio a half hour after he had been talking to some unknown man on the public highway, who gave a description of some man he said was identified with this crime as the killer, is too farfetched to be compelling upon me. There is nothing to associate the man seen in the subway by Brancaccio with the man who committed the alleged murder herein.

Nowhere in this record do I find anything to indicate this verdict was induced by fraud or that the constitutional rights of the defendant were invaded in any manner whatsoever, and there is no fact to be reviewed under this writ of *coram nobis* that has not already been reviewed by the appropriate courts of this State. This motion, therefore, is in all respects denied. Enter order.