THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES MONS, Defendant.

Police Court of the City of Troy, July 14, 1949.

*Earle J. Wiley, District Attorney* (*Edward J. Poland* of counsel), for plaintiff.

*Edmund Skorupski* for defendant.

O'CONNOR, J. The defendant seeks through the medium of an order in the nature of a writ of error *coram nobis,* to set aside a judgment of conviction in this court entered March 13, 1949. He further requests permission to withdraw his former plea of guilty to two separate informations charging him with disorderly conduct in violation of section 720 of the Penal Law upon which such judgment was based and asks for leave to plead anew to the same. The disorderly conduct alleged to have been committed by him consisted of certain offensive, depraved, lecherous and indecent acts committed by him in his automobile before and in the presence of children in immature years.

The moving papers would seem to dictate a somewhat detailed recital of the facts attendant upon Mons' arrest and subsequent conviction. At about 2:00 P.M. on the 2d day of March, 1949, he was arrested in the town of Colonie, Albany County, by virtue of warrants of arrest duly issued by this court, and immediately brought to the Central Police Station, Troy, N. Y. Although he could have made immediate application for bail to the various police officials more specifically described in subdivision 5 of section 554 of the Code of Criminal Procedure, no such request was made by him or on his behalf, and he was detained until the following morning when he was formally arraigned. He appeared in person and by Edmund Skorupski, Esq., his attorney, and after entering a plea of " not guilty — by reason of possible mental illness ", requested an examination under section 870 of the Code of Criminal Procedure for the purpose of determining whether or not he was insane or a mental defective which request was immediately granted, the District Attorney consenting thereto. On the same day he was committed to

Marshall's Sanitarium, Troy, N. Y., for observation by Dr. George Butterfield and Dr. A. M. Chapnick, where he remained until March 13, 1949. On that day he was returned to the jurisdiction of this court by these eminently qualified psychiatrists who, in a jointly signed report, certified him as a person " possessed of average intelligence — not suffering from any mental illness — and mentally capable of understanding the charges against him and the proceedings of making his defense". He thereupon withdrew his plea of not guilty to each charge and was sentenced to one year in the Rensselaer County Jail upon each complaint, the sentences to run concurrently rather than consecutively. In all proceedings had before this court he was represented by extremely competent counsel, and it is not contended that he was deprived of any of his fundamental rights as a defendant accused of crime.

Despite these precautions to determine his ability to answer the charges filed against him because of alleged mental incapacity, he now urges that unknown to anyone, and from the time of his arrest on March 2, 1949, until the time of his conviction on March 13, 1949, he was suffering from what he says was a " psychopathic delusion " not amounting to mental illness, which, if known, would have caused this court to refuse to accept his pleas of guilty. When the moving papers are stripped of the pseudopsychological jargon contained therein, it would appear that this " delusion " is simply one commonly experienced by all miscreants after legal apprehension, and consisted of reliance on an alleged promise by one of the arresting officers that if he co-operated with them and signed a confession he would go free. He further avers that his plea of guilty made some ten days after the alleged promise was a direct result of a continuing delusion that such co-operation would effect his immediate release.

Motions in the nature of a writ of error *coram nobis* owe their origin to an ancient, almost obsolete common-law writ of error known as " quae coram nobis residant " — meaning " let the record and proceedings remain before us ". It was devised by the sixteenth century judiciary in order to permit a person wrongfully detained to call to the court's attention facts outside the record and unknown at the time of judgment, which, if known, would have changed or have prevented the judgment. It was only permitted where some error of fact and not of law existed affecting the validity and regularity of the proceedings, and which did not appear on the face of the record. It was never intended to release a party from the consequence of his own

neglect, nor to enable the guilty to escape punishment legally imposed.

The rationale behind the creation of such a remedy would seem to have been a recognition that every competent tribunal should have the inherent jurisdiction to correct mistakes in its own judgments, and to investigate, and in a proper case upon a proper showing, to set them aside at any time if they are based upon trickery, deceit, coercion, fraud or misrepresentation. Upon the same theory a defendant's plea of guilty induced by a violation of his constitutional rights will be nullified, for a plea of guilty may not be substituted for the crime itself and is a nullity if no criminal act has been previously posited by the defendant. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Matter of Morhous* v. *New York Supreme Court,* 293 N. Y. 131; *People* v. *Gersewitz,* 294 N. Y. 163; *People* v. *Foster,* 182 Misc. 73.) In holding that the remedy is as available to persons aggrieved in courts of special sessions as it is in courts of general jurisdiction, Judge DESMOND, of the Court of Appeals made the following cogent observation concerning the genesis of *coram nobis:* " a duly constituted court * * * ' * * * will not allow itself to be made an instrument of wrong, no less on account of its detestation of everything conducive to wrong than on account of that regard which it should entertain for its own character and dignity.' " (*Matter of Hogan* v. *New York Supreme Court,* 295 N. Y. 92, 96.)

Yet, however well settled it may now be that a court has the right to so control its proceedings as to protect every person interested in the result thereof from fraud and injustice, it is still mandatory that the movant's application must be justified as one requiring the exercise of the court's inherent power to set aside its own judgments *within the limited and circumscribed field of the common-law writ of coram nobis.* (*Matter of Hogan* v. *Court of General Sessions,* 296 N. Y. 1.) Unless the judgment of conviction has deprived the defendant of his liberty without due process of law, *coram nobis* will not lie. (*People* v. *Whitman,* 185 Misc. 459, 464.)

It is the considered opinion of this court that the movant has failed to show an error of fact not appearing on the record herein, within the limited and circumscribed field of the common-law writ of *coram nobis.* In fact the writer of this opinion has arrived at the reluctant conclusion that the so-called " psychopathic delusion " never existed until the immediate consciousness of the consequences of a public revelation by evidence

adduced at a trial of defendant's loathsome sexual outlets, had been dulled by two months of incarceration. Other courts have not been hesitant in arriving at the same conclusion in similar cases, for it has been held that where the accused charges that he was induced to plead guilty on a false promise as to his sentence, the nature of the crime is relevant in determining the probability of his desire to escape a jury trial. (*People* v. *Forbes,* 219 Cal. 363.)

The defendant's contention that he was lulled into a state of '' psychopathic delusion '' by the honeyed promise of a police officer that he would go free if he co-operated is not as novel as it may seem to be at first blush. In a strikingly similar situation it was held that '' promises on the part of the police are of doubtful importance. Police officers have no authority either real or apparent to condone crime, and even confessions obtained by such methods are freely admissible in evidence unless the District Attorney stipulates otherwise.'' (*People* v. *Wurzler,* 184 Misc. 224.) The only apparent distinction between this adjudication and the instant case is that Wurzler was not as artful as Mons in the use of misleading verbiage.

Since motions of this nature are addressed to the sound discretion of the court (*People* v. *Bartindale,* 259 App. Div. 841, affd. 284 N. Y. 681) this court feels impelled to add that the defendant's position is as preposterous as it is fantastic. Upon his own instance he was committed to a private mental institution for the express purpose of discovering any subjective personality defects which might have impelled this court to a determination that he was not legally responsible for his conduct. The only fraud, trickery, deceit or misrepresentation that exists here has been perpetrated by the defendant rather than upon him. Here we have a college student of at least average intelligence concealing from his able attorney, and from two of the most competent psychiatrists in the vicinage for a period of ten days, an alleged delusion alleged to be so strong as to prevent him from making an intelligent choice between two simple alternatives. If such palpable fabrications as delusions which exist only in the minds of movants can be said to justify an exercise of a court's inherent power to correct errors of fact not apparent on the record, then the remedy itself becomes an instrumentality of fraud. Defendant's motion is accordingly denied