THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MICHAEL RICHETTI, Appellant.

Argued November 20, 1950; decided March 8, 1951.

*James J. Abernethy* for appellant. The matters presented by appellant's affidavit showing that he was not advised of his right to counsel raised a question of fact as to which appellant was entitled to an oral hearing or trial notwithstanding the statements in the opposing affidavits that it was the practice of the court to advise defendants of their right to counsel. (U. S. Const.; 6th Amendt.; N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8, 308; *Matter of Bojinoff* v. *People,* 299 N. Y. 145; *Rice* v. *Olson,* 324 U. S. 786; *Canizio* v. *New York,* 327 U. S. 82; '' The Writ of Error Coram Nobis '' by Judge Stanley H. Fuld, N. Y. L. J., June 6, 1947, p. 2230, col. 1; *People* v. *Gillette,* 185 Misc. 803; *People* v. *Sadness,* 275 App. Div. 731.)

*Charles P. Sullivan, District Attorney* (*Henry W. Schober* of counsel), for respondent. There was no violation of defendant's constitutional rights. (*Uveges* v. *Pennsylvania,* 335 U. S. 437; *Matter of Bojinoff* v. *People,* 299 N. Y. 145; *Foster* v. *Illinois,* 332 U. S. 134; *Hysler* v. *Florida,* 315 U. S. 411; *Rex* v. *Wilkes,* 4 Burr. 2527; *Jacques* v. *Cesar,* 2 Saund. 100; *Smith* v. *Kingsley,* 19 Wend. 620; *Ferris* v. *Douglass,* 20 Wend 626; *Hayen* v. *People,* 3 Parker Cr. Rep. 175; *Seacord* v. *Burling,* 1 How. Pr. 175; *State ex rel. Emmert* v. *Gentry,* 223 Ind. 535; *People ex rel. Hirschberg* v. *Orange Co. Ct.,* 271 N. Y. 151; *Berson* v. *Berson,* 243 App. Div. 801; *Bronson* v. *Schulten,* 104 U. S. 410; *Pickett's Heirs* v. *Legerwood,* 7 Pet. [U. S.] 144.)

Desmond, J. In 1949, this defendant, confined in Dannemora Prison, moved in the County Court of Queens County (by a '' coram nobis '' type application), to set aside a 1922 judgment of that court convicting him of, and sentencing him for, two felonies. Defendant's stated grounds were two: first, that his 1922 sentence was void in that, at the time he (then seventeen years old) pleaded guilty he was in no wise informed of his right to have counsel; and, second, that a probation officer had informed defendant that because of defendant's youth, the County Judge would probably put defendant on probation if he would plead guilty. The first of those allegations, if sustained, would, of course, nullify the conviction (*Matter of Bojinoff* v. *People,* 299 N. Y. 145; Code Crim. Pro., §§ 8, 308). The second of defendant's assertions describes an alleged prediction only, by a court attaché, and would, obviously, be no ground for a

vacatur of the sentence. In filing his sworn petition (which was actually a renewal of a similar motion made by defendant, and denied, in 1944) he expressly requested that he be granted an order, under section 10-c of the Code of Criminal Procedure, allowing him to appear and be heard in person on the application. Defendant's moving papers showed that he had been indicted on April 18, 1922, and had pleaded guilty on the same day, and had been sentenced on April 24, 1922, that he did not then know, and was not told by anyone, that he was entitled to be represented by a lawyer, that he was convicted of two other crimes in 1932 (receiving then a twenty-year sentence as a second offender) but that he never knew, till shortly before he made (in 1944) the first of these two *coram nobis* applications, that his 1922 conviction was void because of the deprivation of his right to have a lawyer.

The papers submitted by the People to the County Judge, in opposition to these motions to annul the 1922 criminal judgment, consisted of affidavits by a former County Court stenographer (Sullivan) and by the probation officer (Butler) referred to in the moving papers. Neither affiant remembered the 1922 proceedings as to this defendant, but each stated his recollection as to practices then current in the Queens County Court. Each swore that it was the unvarying custom of the then County Judge (now dead) to inform every defendant of his right to counsel. Sullivan's affidavit showed that his stenographic minutes for 1922 had been destroyed, as was routinely done, and Butler's affidavit denied any promise or suggestion that defendant would be put on probation, the latter alleging that he never had any contact with a prisoner until after sentence had been imposed. Butler's affidavit showed, however, that the probation office report on defendant's case did establish that he was not represented by any lawyer. There are no other records available. Thus we had, as pleadings or statements of the respective positions, the sworn allegations by defendant that he had been denied his rights in a matter most fundamental, with a request that he have a trial in open court of that charge, and countering allegations which went no further than to point to customs said to have been in vogue. Defendant's sworn assertions were certainly not incredible on their face. They were not specifically

denied. Our own records (*Matter of Bojinoff* v. *People, supra,* referring to *People ex rel. Moore* v. *Hunt,* 258 App. Div. 24), tell us that as late as 1936, years after the judgment here assailed, at least one able and experienced judge of a busy criminal court, had an invariable custom of *not* notifying defendants of their right to counsel, if and when they pleaded guilty on arraignment. Nonetheless, the County Court of Queens County refused to order a hearing on this application, or to bring defendant into court for a hearing, but, on the papers, denied the motion.

The County Judge, noting that defendant had not made any such contention (as to the 1922 conviction) when tried on another charge in 1932, was " not impressed by the sincerity or the accuracy of the recollection of this defendant ". (Those impressions were, of course, gained from an inspection of papers only, and defendant was denied any opportunity of submitting himself to cross-examination, or of cross-examining the affiants whose statements of imperfect recollection the County Judge accepted as the truth of the matter.)

On appeal, the Appellate Division, Second Department, affirmed. Its views on the case may be summed up in two sentences from its memorandum (276 App. Div. 1091, 1092) : " Under the presumption of regularity attending judgments of conviction, in the absence of creditable evidence to the contrary, it may not be gainsaid that the appellant was properly advised, at the time of the acceptance of his plea of guilty and his conviction in 1922, as to his right to counsel. (*Matter of Bojinoff* v. *People,* 299 N. Y. 145, 150–151). Appellant's bald assertions to the contrary upon the prior motion, first put forth in 1944, twenty-two years after the conviction, when the stenographic minutes of the proceeding in 1922 were no longer available (having been lawfully disposed of), must be rejected as insufficient to rebut the presumption. (See *Foster* v. *Illinois,* 332 U. S. 134, 138–139.) "

Defendant was granted leave to appeal to this court, primarily to examine into this question, of undoubted prime importance: May a convicted defendant, moving by way of *coram nobis,* to set aside his conviction on alleged grounds sufficient therefor if proven, and not conclusively shown by opposing papers to be false, be denied a trial, if properly

demanded, of those sworn allegations? The question, we think, answers itself, in the negative.

Fundamental concepts of due process, decisions of the United States Supreme Court and of our own court, and the very nature of the *coram nobis* type of relief — all demand a trial of such sworn assertions. The possibility, or probability, that such trials will be numerous, is no answer at all, and will not be. further noticed herein. Likewise, as to the fact that defendant is a convict, and the opposing affiants court officers. Defendant has been denied his day in court, and we must see that he has it, be he right or wrong, truthful or lying, good citizen or bad. We do comment, however, that power in a court to deny hearings in such cases might sometimes work out to the opposite result and one distasteful to the prosecution. If relief can be denied without a trial, may it not be granted to the prisoner in similar summary fashion?

We think the United States Supreme Court decided this case for us when, in *Rice* v. *Olson* (324 U. S. 786, 789), it said, of a disputed contention like that advanced here, that it " must be determined by evidence where the facts are in dispute." Several years earlier, in *Walker* v. *Johnston* (312 U. S. 275, 286–287), the court remarked, as to the sworn statements in a convict's petition: " It is true that they are denied in the affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by evidence taken in the usual way." An identical ruling was made by the same court in *Waley* v. *Johnston* (316 U. S. 101, 104). True enough, the *Walker* and *Waley* cases were in habeas corpus, not *coram nobis*, but that difference is procedural only. Those very cases were cited by us in our own leading *coram nobis* case of *Matter of Lyons* v. *Goldstein* (290 N. Y. 19, 25, of which more hereafter), as authority for the proposition that due process can be satisfied " only when a person may be granted a hearing upon the merits before a competent tribunal where he may appear and assert and protect his rights ".

It is suggested that *Hysler* v. *Florida* (315 U. S. 411) and *Taylor* v. *Alabama* (335 U. S. 252) leave it to the States to say whether an oral hearing is to be allowed in such cases. Neither decision so holds. Each says that Federal due process requires

no trial if the State courts be convinced, *on the record,* that there is no reasonable probability at all, that defendant's averments are true. Similar reasons for denying a hearing appear in *Canizio* v. *New York* (327 U. S. 82, 85) and in *Foster* v. *Illinois* (332 U. S. 134) the latter being cited in the Appellate Division memorandum in the present case. Such is not the situation here.

But, even if the Supreme Court holdings did not constrain us to give this man a trial, we would be faced with our own declarations on the subject. As Judge FULD has said in a notable speech on " The Writ of Error Coram Nobis " (N. Y. L. J., June 5, 6 and 7, 1947), *Matter of Lyons* v. *Goldstein (supra)* was " a landmark in the field of criminal law." (N. Y. L. J., June 6, 1947, p. 2230, col. 2.) Ruling that every court has inherent power, without or despite the statutes, to deal with its own fraudulently contrived judgments, we used, in *Matter of Lyons* v. *Goldstein (supra),* language that cannot be reconciled with a refusal to grant this defendant's prayer for a hearing in open court. We there asserted (p. 25) every defendant's right, in such a dispute, to " a hearing upon the merits before a competent tribunal where he may appear and assert and protect his rights ", that is, " to be heard on proof that he was defrauded or coerced into pleading guilty to a crime ". Later came the case of Whitman (see *New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688) and the subject was canvassed by us again (*Matter of Morhous* v. *New York Supreme Court,* 293 N. Y. 131). The description in the latter opinion (p. 134), of *coram nobis* type motions, as the " appropriate ' corrective judicial process to remedy the alleged wrong ' " required by due process (see *Mooney* v. *Holohan,* 294 U. S. 103, 113), means nothing at all unless that a person, swearing to allegations of such a wrong, and not conclusively refuted by unquestionable documentary proof contra, must have a trial in open court if he wants one. To make such solemn assertions of the availability in New York of full, complete processes to right such wrongs, and then, in practice, to throw such allegations out of court without trial, is to extend relief with one hand and take it away with the other. Due process insists on a real hearing, " not a sham or a pretense " (*Palko* v. *Connecticut,* 302 U. S. 319, 327).

A motion, like defendant's here, is, it is settled, the modern counterpart, in civil and criminal causes, of the old *coram nobis* writ (*Smith* v. *Kingsley,* 19 Wend. 620; *Matter of Lyons* v. *Goldstein, supra; Matter of Morhous* v. *New York Supreme Court, supra*), and it would be easy to multiply citations to show that disputes of fact in such proceedings have always been tried like similar issues in any other cause. Such is the meaning of *Arnold* v. *Sandford* (14 Johns. 417, Supreme Court of Judicature, 1817) and of many cases from other States (see *Chambers* v. *State,* 136 Fla. 568, revd. on other grounds 309 U. S. 227; *People ex rel. Courtney* v. *Green,* 355 Ill. 468; *Stephenson* v. *State,* 205 Ind. 141; *Cook* v. *Conway,* 3 Dana [Ky.] 454; *State* v. *Ray,* 111 Kan. 350; *Mitchell* v. *State,* 179 Miss. 814; *Simms* v. *Thompson,* 291 Mo. 493; *Crawford* v. *Williams,* 1 Swan [Tenn.] 341; 4 Crim. L. Mag., Note, 376; 18 L. R. A., Note, 842). Those holdings, ancient and recent, criminal and civil, justify the statement made by Judge FULD, in his speech on the subject above referred to, when, citing *Waley* v. *Johnston* and *Walker* v. *Johnston* (*supra*) he said: " improbable or unbelievable though the allegations may seem — though they ' may tax credulity ' — the defendant is entitled to a hearing ". And we know, from records on appeals in this court, that it is the practice in trial courts throughout the State to hold formal trials in these matters, whenever the petition exhibits a prima facie case. *People* v. *Oddo* (300 N. Y. 649) is not to the contrary since Oddo's allegations were such that, true or false, they were no ground for *coram nobis* relief.

A " hearing " or " trial " of such an issue of fact is an empty form unless it takes place in open court, with the right, on each side, to examine and cross-examine. For centuries a " trial " of a dispute of fact has meant " the examination, before a competent tribunal, according to the laws of the land, of the *facts* put in issue, for the purpose of determining such issue " (*Ward* v. *Davis,* 6 How. Prac. 274, 275). A " hearing " contemplates the right to be present and to put forth one's contentions by proof and argument (Black's Law Dictionary, p. 882, and cases cited). This State's courts have always been faithful to these concepts. Since 1938 our State Constitution (art. I, § 6) has put into most solemn form the traditional rule

(see *People* v. *Henriques & Co.,* 267 N. Y. 398, 402; *People* v. *Sickles,* 156 N. Y. 541, 547; *Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, 293), that " in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him." Speaking of a disputed demand for a deficiency judgment, this court said: " In so important a matter the witness should be produced before the court, subject to observation and cross-examination " (*New York Life Ins. Co.* v. *Guttag Corp.,* 265 N. Y. 292, 296). The liberty of one who, at seventeen years of age, was indicted and plead on the same day is an important matter, too. To quote a deathless utterance of a great American: " Shall we be more tender of our dollars than of the lives of our sons? "

We comment briefly on the Appellate Division's memorandum. Reciting defendant's contentions and the contents of the opposing affidavits, it refers to " the presumption of regularity attending judgments of conviction " and holds that, on the papers here, the presumption was not rebutted. We do not think that presumption of regularity can serve to settle without trial, what otherwise would be a plain dispute of fact. A presumption of regularity exists only until contrary substantial evidence appears (*People ex rel. Wallington Apts.* v. *Miller,* 288 N. Y. 31, 33; *Galpin* v. *Page,* 18 Wall. [U. S.] 350, 365; 9 Wigmore on Evidence [3d ed.], § 2491). It forces the opposing party (defendant here) to go forward with proof but, once he does go forward, the presumption is out of the case. It could not conceivably be used to prevent defendant from proving his allegations.. There must be a trial, as we have indicated, and it will be for the Trial Judge to pass on all questions of fact, including the credibility of defendant and of any other witnesses on either side. There are references, too, in the Appellate Division memorandum to defendant's long delay in raising that question, but we have held (*Matter of Bojinoff* v. *People, supra*; *Matter of Lyons* v. *Goldstein, supra*) that there is no time limit on such applications. Even if laches could be a defense (which we doubt but do not decide), that defense itself would require a trial.

The orders should be reversed, and the case remitted to the County Court of Queens County for trial.

CONWAY, J. (dissenting). The defendant when arraigned in the County Court of Queens County in April, 1922, pleaded guilty to an indictment which charged him with the crimes of burglary in the third degree and grand larceny in the second degree. Thereafter he was sentenced to the New York State Reformatory at Elmira. The defendant's pedigree, taken at the time of his plea of guilt, disclosed that, although he was then but seventeen years of age, he had already been confined in the New York Catholic Protectory for truancy and in the New York House of Refuge for larceny.

Elmira Reformatory was thus the third institution to which he had been committed. The fact that he was sentenced there, rather than to a State prison, saved his citizenship for him and made him eligible for parole in thirteen months. We mention this to indicate that this young man was mildly punished, in view of the fact that the distinguished County Judge who sentenced him is not alive to defend himself against the claim that he failed to ask Richetti when he was arraigned and before he pleaded guilty whether he desired the aid of counsel (see Code Crim. Pro., § 308).

Approximately ten years later, in 1932, the defendant was convicted of burglary in the third degree and petit larceny in the same county. As a second felony offender he was sentenced to imprisonment for a term of twenty years. He was then represented by counsel.

We have recently passed upon a still later episode in the defendant's life in *Matter of Richetti* v. *New York State Bd. of Parole* (300 N. Y. 357).

In August of 1944, twenty-two years after his plea of guilt in 1922, the defendant moved in the County Court of Queens County to vacate the judgment of conviction of 1932, sentencing him as a second offender and to set aside the judgment of conviction of 1922 upon the ground that he had not been advised of his right to the aid of counsel prior to his plea of guilt.

When he made that motion, the County Judge who sentenced him in 1922 was dead. The court stenographer, Sullivan, had

retired and made affidavit that he had destroyed his notes upon retirement as permitted by law. He further deposed: "Your deponent has no independent recollection of the cause of the above named defendant but in his experience as stenographer your deponent has never known the Honorable Burt Jay Humphrey, when County Judge, to omit to inform a defendant that he had the right to the aid of counsel prior to arraignment and at all stages of the proceedings."

A further affidavit was submitted by the probation officer, Butler, now deceased, attached to the Queens County Court in which he deposed that although he had no indepentent recollection of the case: "That your deponent well recalls that it was the regular and every day practice of the County Court of Queens County during the time that the Honorable Burt Jay Humphrey presided therein that upon each and every arraignment of a defendant for pleading to an indictment such defendant was notified of the nature of the charge and advised further that he was entitled to counsel and that if he so desired and could not afford to retain counsel one would be assigned by the court."

The defendant asserted also in his affidavit: "Mr. Butler interrogated me about my family history and then told me I was to go into court to plead to the indictment pending against me. He also said further: 'You're kind of young to be sent to prison, if you plead guilty I believe the judge will put you on probation.'"

To that Butler, in a counteraffidavit, replied:

"That at no time did your deponent ever counsel or advise any defendant to enter a plea of guilty; nor did your deponent at any time inform any defendant that should a plea of guilty be entered by such defendant leniency would be shown by the court upon sentence.

"In fact, your deponent received the cases and made his investigation only after the defendant had pleaded guilty or had been found guilty by the verdict of a jury."

The motion was denied and an opinion written. In July, 1949, the defendant moved for leave to renew his prior motion and for an order in the nature of a writ of error *coram nobis* to vacate and set aside the 1922 conviction and for an order

directing his production before the court for a *hearing* on the motion. The District Attorney relied upon the affidavits submitted in connection with the 1944 application. The second application was denied and the Appellate Division unanimously affirmed the order of denial.

The contention is made that, so long as the defendant asserted that when he was arraigned he was not asked by the court if he desired the aid of counsel before he pleaded guilty, the County Court and the Appellate Division lost all power to determine *on the papers submitted* whether there was merit in defendant's application. Since it is conceded in the majority opinion that the quoted statement of Butler would be no ground for vacating the judgment, our court is now determining that so long as a prisoner makes the bare allegation that he was not advised that he was entitled to counsel before he pleaded guilty, his assertion deprives the County Court and the Supreme Court of the jurisdiction to decide the motion upon the papers submitted. We are referred to no statute or case for this new rule which affects the powers of the County and Supreme Courts. To the contrary, in *People* v. *Oddo* (300 N. Y. 649) where the petitioner asked to be heard in person, we held, on the authority of *People* v. *Fanning* (300 N. Y. 593), that he had been given full opportunity through submission of documents to prove his case and that that was sufficient. (See, also, *Hysler* v. *Florida,* 315 U. S. 411; *Taylor* v. *Alabama,* 335 U. S. 252.)

Citation of authorities in Federal courts in habeas corpus proceedings are not helpful. Where issues are raised by writ of habeas corpus it has been indicated that a hearing must of necessity be accorded in a Federal court. (*Walker* v. *Johnston,* 312 U. S. 275, and *Waley* v. *Johnston,* 316 U. S. 101.) This is because of the command of the Federal statute (U. S. Code, tit. 28, § 2243) which now provides: " The court shall summarily *hear* and determine the facts, and dispose of the matter as law and justice require." (Emphasis supplied.) The prior statute (U. S. Code, tit. 28, § 461), while differing in language, was to the same effect. The Federal statute has gone further since 1867 than the practice of our State. (*Matter of Morhous* v. *New York Supreme Court,* 293 N. Y. 131, 139 [LEHMAN, Ch. J.].) The difference between habeas corpus and *coram nobis* is more than " procedural only ".

We do not read the papers or brief of the prisoner as attempting to establish a " fraudulently contrived " judgment. Nor is there claim here that the prisoner was " defrauded or coerced into pleading guilty to a crime * * * " as quoted by the majority from *Matter of Lyons* v. *Goldstein* (290 N. Y. 19, 25). These are harsher expressions than used by the prisoner in referring to one who served as County Judge and Supreme Court Justice for thirty-three years.

Thus we return to the sole question posed. Where a prisoner who has pleaded guilty asserts that he was not asked if he desired the aid of counsel, before pleading guilty, are our courts divested of *power* to decide his application for a writ in the nature of *coram nobis* upon the papers submitted. The Appellate Division decided, upon the petition of the defendant, the affidavits submitted by the People and the exhibits, that the presumption of regularity of judicial proceedings supported the conclusion, *in the absence of a clear showing to the contrary* (*Canizio* v. *New York*, 327 U. S. 82, 84), that the Trial Judge had asked the petitioner if he desired the aid of counsel in accordance with section 308 of the Code of Criminal Procedure. In other words the Appellate Division decided upon the facts that the prisoner had not overcome the presumption of regularity of judicial proceedings because he had not made a clear showing that he had not been asked if he desired the aid of counsel when arraigned. When that court read the affidavits of the prisoner, the official stenographer and the probation officer, it was within its competency, as it had been of the County Court, to say that on this record there was no credible evidence requiring a contrary holding by reason of a clear showing by the defendant. We cannot say as a matter of law that the Appellate Division was without *power* to so determine. Unless we can say that as a matter of law, we cannot disturb the finding of fact but must affirm. It has not been argued that the County Court and Appellate Division should have exercised discretion in favor of according an oral hearing to the defendant and abused that discretion as a matter of law — no doubt because so to do would have conceded the *power* in an appropriate case to make determination upon the papers submitted. We hold that this was such an appropriate case.

*Matter of Bojinoff* v. *People* (299 N. Y. 145) the case principally relied upon by the defendant is readily distinguishable. In that case the defendant was convicted of grand larceny, second degree, on a plea of " guilty " in 1936 when he was sixteen years old. He made a *coram nobis* application to vacate two judgments of conviction (January, 1936, and June, 1936) on the grounds that he was not asked if he desired the aid of counsel and that no counsel was assigned. The sentencing Judge had died and the stenographer's minutes were no longer available, presumably having been destroyed as authorized by law. The Monroe County Court, where the defendant was convicted, kept as part of its routine administration a permanent record of judgments of conviction on a printed form with blanks for the insertion of information. The printed forms contained the following: " [defendant] was asked if he desired the aid of counsel, to which he answered ——————— ". In both instances the space allowed for the answer was left blank. Thus we could quite properly conclude that the presumption of regularity which attaches to every judgment was rebutted. We said (299 N. Y. 145, 150) : " Without a definite answer, we cannot be sure that the question was asked and the inference normally attending regularity is open to doubt." No such printed forms were used in Queens County, where the defendant in the case at bar was convicted, so that the presumption of regularity which attaches to every judgment was not rebutted. Moreover, in the *Bojinoff* case the sentencing Judge expressed his view on the very question at issue in an opinion rendered in a contemporary case where a conviction was challenged because the prisoner claimed he had been without benefit of counsel. In his opinion the Judge said (p. 150) : " ' Doubtless this was true, as it has been [the] invariable custom to assign counsel only when the defendant pleaded *not guilty,* as obviously, it is only upon a plea of *not guilty* that the defendant requires a defense.' (*People ex rel. Moore* v. *Hunt,* 258 App. Div. 24, 26.) " (Emphasis in original.) That such was the practice was not controverted by the People who contended only that the defendant could not rely on the statement of the existing practice because he had not connected it with certainty to his own case. Court attachés who served at the time of arraignment made affidavit that it was the

general practice of the court to ask an accused whether he desired counsel only if the accused pleaded " not guilty ". The People offered no affirmative proof. We therefore concluded that the presumption of regularity had been rebutted and that the People had not met the burden of establishing compliance with the statutory requirements. (Code Crim. Pro., § 308.) The Appellate Division pointed out the distinction between the *Bojinoff* case and the case at bar, saying: " The affidavits there were offered as rebuttal to the presumption and not to buttress it." (276 App. Div. 1091, 1092.)

The order should be affirmed.

LOUGHRAN, Ch. J., DYE and FULD, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which LEWIS and FROESSEL, JJ., concur.

Orders reversed, etc.