Maurice W. McCann
(Yates County Judge and Acting County Judge for Monroe County). The defendant herein was convicted on May 21, 1943 in the Monroe County Court, of the crime of murder in the second degree, a jury having found him guilty thereof on May 19, 1943 following a trial in this court.
The defendant was represented on his trial very ably by trial attorneys Mr. Raymond Fowler, a former District Attorney of this county, and Mr. Leland Yost, a former Assistant District Attorney.
The law seems to be well settled that a petitioner in a coram nobis proceeding is entitled to a hearing thereon unless the allegations of the petition are conclusively refuted by unquestionable documentary proof to the contrary. (See People v. Richetti, 302 N. Y. 290, 296.) With this premise in mind we *567 will examine defendant’s allegations — some eight in number — some of which appear to be a repetition of others.
The defendant in the allegations marked “ first,” “ second ” and “ sixth,” alleged that the statements and evidence of Sarah Allen, Frank Zona, Frank Manno and Theresa Rotolo were suppressed by the prosecution. The printed records on appeal to both the Appellate Division, Fourth Department, and the Court of Appeals of defendant’s trial show conclusively that all of the above-named persons were sworn as prosecution witnesses and were subjected to a thorough and exhaustive cross-examination by defendant’s trial lawyer. This allegation to my mind is shown by the above records to be conclusively refuted by unquestionable documentary proof to the contrary.
Next the defendant alleges that the prosecution perpetrated fraud on the court and jury by not calling as a witness a man by the name of Coifaro, who, the defendant claims, if he had been called, would have contradicted a portion of the testimony of the witness, Manno. The defendant alleges that Coifaro had, prior to the time of the trial, told the prosecutor that he had not seen the defendant at his (Coffaro’s) grill.
The defendant in his moving papers makes reference to Manno’s testimony at page 312 wherein Manno testified on direct examination that some hours after the murder of Leon he returned to his work at Coffaro’s Grill and was sweeping out when the defendant walked into the tavern and greeted George Coffaro, and then proceeded to the dining room where he talked to Manno. Defendant’s trial lawyer cross-examined Manno thoroughly and exhaustively concerning his activities at the grill after the murder. Manno’s testimony was not materially shaken by this cross-examination.
Coffaro was in business in Rochester, as evidenced by the fact that defendant testified on his own direct examination (p. 641, folio 1922): “I said to Joe, ‘ Let’s go down to Coffaro’s and have a talk with Manno.’ Q: And have a talk with who? A: Manno, because he worked there.”
Having admitted knowing where Coffaro’s place of business was Coffaro was “ at hand and subject to subpoena ” and was as available to the defendant as to the prosecution. (See Noce v. Kaufman, 2 N Y 2d 347, 353 and cases cited therein.)
The defendant’s claim of fraud on the court and jury by failing to call Coffaro as a witness is conclusively refuted by the testimony and facts as related above.
The defendant now claims that there was “ conscious understanding of leniency for Manno.”
*568 This contention of the defendant seems to be completely answered by the testimony of the witness Manno at pages 398 and 399 of the record on appeal to the Court of Appeals where he was being cross-examined by defendant’s attorney, Mr. Fowler:
Q: When was the last time you talked to anyone about your testimony in this case? A: This morning.
Q: When was the last time before that? A: Talked to my lawyer, Mr. Bechtold.
Q: Mr. Bechtold has given you or told you there have been some assurances made of how your case would be disposed of, hasn’t he? A: No, all he told me to tell the truth.
Q: Yes or No? A: No.
Q: He has told you that you have no assurance of any special consideration for yourself on this charge against you? A: No.
Q: Isn’t it a fact that you know and expect that the charge against you will be dropped in degree if you testify here in this case? A: I expect a little, yes.
Q: How much is a little? A: I don’t know.
Q: What do you expect? A: I don’t know.
Q: What makes you expect it? A: Because I talked.
Q: Who told you? A: No one told me.
Q: Because you have talked you expect it? A: That’s right. I didn’t know I was a State’s witness until I was in the jail, I read it in the paper.
This contention of the defendant is conclusively refuted by unquestionable documentary proof to the contrary.
The petition further alleges that the People made knowing use of Giordano’s perjured testimony, claiming that Giordano has testified differently before the Grand Jury, which indicted defendant for assault second degree alleged to have been committed in August, 1942. The defendant asserts nowhere in his petition that he has at any time made a motion to inspect the Grand Jury minutes. There is nothing in the County Court’s records to show that any such application was ever made or granted. So he could not have known what Giordano testified to before the Grand Jury. Through the courtesy of the District Attorney, I have examined the Grand Jury minutes and find that the defendant’s allegations are without foundation of fact.
Thus this allegation is conclusively refuted by unquestionable documentary proof to the contrary.
The defendant in his “ seventh ” allegation claims that fraud was perpetrated on the court and jury. It is based on statements claimed to have been made to the police by one Joseph De George concerning the testimony of Giordano who, on defendant’s trial, testified that De George had persuaded *569 Giordano to leave the City of Rochester following the assault by the defendant upon Giordano in August, 1942 prior to the murder of which the defendant now stands convicted. Also concerning telephone calls made by De George to Baltimore where Giordano was living after leaving Rochester. The defendant now claims that De George in his statements made to the police denied ever having talked with Giordano.
That De George was a friend of defendant is evidenced by defendant’s testimony at page 640 where he testified that the day following his return from Buffalo, De George came to defendant’s home and of their going to Coffaro’s Grill to talk to Manno and of finding the grill closed. Defendant further testified that he and Joseph De George then drove to Buffalo to sell defendant’s automobile. All of these facts indicate that De George was as available to defendant as a witness as he was to the prosecution.
This allegation is conclusively refuted by unquestionable documentary proof to the contrary.
The defendant in his last allegation claims that there was “ deliberate deceit of court and jury.”
This he claims to have occurred because the prosecution did not call as a witness a man by the name of Patsy Morreal who, defendant claims, told the prosecutor that: “ Manno’s story regarding the sale of the car to him prior to the slaying was not true.”
As one studies this allegation of' the petition one is struck by the way in which the defendant attempts to confuse the issue — how could Morreal have made the alleged statement to the prosecutor before the slaying, when the story regarding the sale was first told at defendant’s murder trial by Manno on his cross-examination by the defendant’s own attorney.
Morreal was as much available to the defense as to the prosecution and could have been subpoenaed by defendant had he desired to have done so.
This allegation is conclusively refuted by unquestionable documentary proof to the contrary.
The petition for a hearing is denied.
Submit order.