Frank Del Vecchio, J.
On January 17, 1934 Angela C'arlucci, Alfred Giallarenzi and Anthony Nadile were jointly indicted, charged with the crime of murder in the first degree in the killing of Joseph Carlucci, husband of Angela Carlucci, in the Town of Dewitt, a suburb of the City of Syracuse. Mrs. Carlucci was granted immunity by the District Attorney and testified for the prosecution in separate trials of the other two defendants. Giallarenzi was convicted in March, 1934 and sentenced to death; the judgment of conviction was affirmed in People v. Giallarenzi (266 N. Y. 453) and he was executed in January, 1935. Nadile was not apprehended until January 27, 1941 and his trial was held in March of that year. The theory of the prosecution was' that Giallarenzi was Mrs. Carlucci’s lover and that they hired Nadile to kill her husband. The defense was an alibi. Nadile’s conviction on March 27, 1941 was affirmed (287 N. Y. 748) but the Governor commuted his death sentence to life imprisonment.
*449 In June, 1960 Nadile presented to this court an application for a writ of error coram nobis to set aside the judgment of conviction upon the ground that the indictment had been remitted to County Court and never ordered back to Supreme Court where his trial was held. Since the records disclosed that the indictment had never been remitted to County Court but always remained in Supreme Court, the application was denied without a hearing.
The defendant now applies for a writ of error coram nobis to vacate the judgment of conviction and for an order directing a hearing on the application, upon the claim that his indictment and conviction were procured by the testimony of two witnesses, Traver and Slocum, known by the prosecution to be perjured, thereby denying him due process under both the State and Federal Constitutions.
It is well settled that a conviction procured by the use of perjured testimony known to be such by the prosecutor is a denial of due process of law in violation of the Fourteenth Amendment to the United States Constitution and section 6 of article I of the New York State Constitution. (Mooney v. Kolohan, 294 U. S. 103; Pyle v. Kansas, 317 U. S. 213; Matter of Morhous v. Supreme Court, 293 N. Y. 131.) The New York Court of Appeals has stated that in these circumstances the post-conviction relief is by way of writ of error coram nobis (People v. Sadness, 300 N. Y. 69, 73). The same court has repeatedly held that when a coram nobis petition alleges facts which if true would entitle petitioner to relief, there must be a trial of those allegations, unless their falsity is conclusively demonstrated by unequivocal documentary proof (People v. Richetti, 302 N. Y. 290, 296; People v. Picciotti, 4 N Y 2d 340, 344-345); but when the record conclusively demonstrates the falsity of the allegations and that there is no reasonable probability at all that defendant’s averments are true, a hearing will be denied. (People v. Guariglia, 303 N. Y. 338, 343; People v. White, 309 N. Y. 636.)
Liberal as the Court of Appeals has been in safeguarding the right of a defendant to invoke the inherent power of a court to correct its own judgment of conviction (see People v. Richetti, supra; People v. Langan, 303 N. Y. 474), it has nevertheless made clear that the right to appear in open court and be heard does not attach, automatically, to every application in the nature of a coram nobis proceeding. In the language of Judge Burke, writing for the court in People v. White (supra, pp. 640-641):
“We said in People v. Richetti (302 N. Y. 290, 298): ‘A presumption of regularity exists only until contrary substantial *450 evidence appears (People ex rel. Wallington Apts. v. Miller, 288 N. Y. 31, 33; Galpin v. Page, 18 Wall. [U. S.] 350, 365; 9 Wigmore on Evidence [3d ed.], § 2491).’ Charges made in coram nobis are subject to the criteria relied upon in all causes to determine where the truth lies. Bare allegations not confirmed by the recorded facts and contrary to the conduct of the defendant and his attorney, are insufficient in law to warrant the granting of a hearing. The defendant is not entitled to a hearing on charges lacking factual support. Due process does not require a court to accept every sworn allegation as true. Many sworn allegations are palpably untrue, not improbable or unbelievable, but untrue. * * *
“ The test is whether there is, as a matter of law, a dispute of fact which entitles the defendant to a hearing. (People v. Richetti, 302 N. Y. 290, supra; Rice v. Olson, 324 U. S. 786.) We have stated 1 that Federal due process requires no trial if the State courts be convinced, on the record, that there is no reasonable probability at all, that defendant’s averments are true. ’ (People v. Richetti, supra, pp. 295-296.) ”
With this statement in mind it is appropriate now to examine the application made by defendant.
The moving papers consist of a verified petition in which defendant discusses at length the testimony of Traver, Slocum and Carlucci, pointing out what he regards as inconsistencies and improbabilities in the evidence of the two former witnesses who identified defendant in a parked car on Grand View Road shortly before the murder. To bolster his argument that they committed perjury, Nadile refers to an unidentified sketch map, drawn by defendant for all that appears, and to two letters dated September, 1960 received by him from the membership manager of the Syracuse Chamber of Commerce, one stating that “ According to the references contacted * * * Grand View did not exist ” in 1933, the other referring to the weather conditions on the day of the crime. He claims this is ‘ ‘ new evidence ’ ’ which must be refuted by unquestionable documentary evidence to deny a hearing on his application.
The petition alleges that Carlucci, an accomplice, testified that on the afternoon before the homicide she and Giallarenzi sat in the rear seat of an automobile which had been driven by Nadile from Syracuse to a dead-end side road and parked a short distance from Thompson Road facing Thompson Road; that while so parked they discussed how and where Nadile would kill her husband later that night. The record shows she also testified that while there she saw only one car turn off Thompson Road into the road they were on and slowly pass their car. Nadile *451 claims that “ There is no corroboration of the conspiracy to commit the crime, no proof of premeditation and no proof that Tony Nadile was in Syracuse on the day of the crime ” without the perjured testimony of Traver and Slocum, who testified they had been in the passing car and identified defendant as the man behind the wheel in the car parked on Grand View Road.
The record on appeal shows Traver testified that he had been Superintendent of Highways since 1922, living in the Town of Dewitt, and that it had been his practice to reach his home by driving along Thompson Road and turning right on Grand View which was located halfway between Dewitt Cemetery and Salt Springs Road intersection with Thompson Road. He also testified that at about 3:00 p.m. on the day of the homicide he was a passenger in a car driven by Slocum; that this car made a right turn off Thompson Road on Grand View and “ slowed right down almost to a stop ” when it passed a parked car off Thompson Road; that he observed a man and a woman in the back seat and identified Nadile as the man in the front seat; that when he arrived home there was some conversation on the subject of the people in that car.
Mr. Slocum testified that he was the driver of the car with Traver seated in the rear behind him and Mr. Waite seated in front beside him; that he made a right turn at Grand View and when he passed the parked car he saw Nadile behind the wheel and a man and woman in the rear.
Defendant attacks the testimony of these two witnesses as perjured because his competent, able and experienced counsel, by a vigorous cross-examination, developed that these witnesses may have made human errors in the observations of some of the unimportant facts made eight years before the trial. His counsel argued in the Court of Appeals that their testimony was incredible and unworthy of belief. There is no proof however that they willfully testified to facts which they knew were false; their credibility, memory, truthfulness and accuracy with respect to their observations, whether contradicted or not, were exclusively for the jury (Lee v. City Brewing Corp., 279 N. Y. 380, 384; People v. Gaimari, 176 N. Y. 84, 94) and coram nobis is not a substitute for an appeal. (People v. Whitman, 185 Misc. 459; People v. Grattop, 192 Misc. 667; see, also, People v. Shapiro, 3 N Y 2d 203, 206.)
Defendant does not attack the unimpeached testimony of Waite who was seated on the right side next to the driver and testified that when Slocum made a right turn off Thompson Road they slowly passed the parked car and he observed a man in the front seat and a man and woman in the back, also that they discussed the subject of the parked ear and its occupants.
*452 Neither does defendant attack the testimony of Mr. Francey who positively identified Nadile as the man who, between 8:00 p.m. and 8:30 p.m. on March 15, 1933, was walking around in the vicinity of his gas station located a short distance from the scene of the homicide which, according to defendant’s petition, occurred at 7:30 p.m. Francey also testified among other things that Nadile entered the station, remained there two or three minutes and asked Francey when he could get a bus down the Cherry Valley route.
Another witness, Mr. Waters, who was in the gas station at the time Nadile entered, also identified him and observed he was nervous and wringing his hands.
The sketch map attached to the petition does not show the dead-end road to the right or west of Thompson Road which was used by Traver to reach his home. The letter from the Chamber of Commerce stating that Grand View did not exist in 1933 is based on hearsay and has no probative value. That both of these items are false is conclusively demonstrated by the official maps and records on file in the Onondaga County Clerk’s office as well as the atlas of Syracuse and suburbs which show that Grand View did exist in 1933 and was a dead-end street running west from Thompson Road in the location given by Traver. The records also show that the name Grand View was later changed to Radcliffe Road. Furthermore, on the trial a map of the area involved, prepared by a civil engineer in 1941, was received in evidence and the engineer testified that he knew where Grand View was in 1933 but that the name had since been changed to Radcliffe Road. A commercial photographer who took photographs of the area in January, 1934 testified he knew where Grand View was and located it during the trial.
In view of this and other evidence in the record, it cannot be said that Traver and Slocum committed perjury, nor that, without their testimony, there is in the record ‘ ‘ no proof that Tony Nadile was in Syracuse on the day of the crime ”. The allegations in the petition fit the description stated in People v. White (309 N. Y. 636, 641, supra): “Many sworn allegations are palpably untrue, not improbable or unbelievable, but untrue.” The court is satisfied that the “new evidence” offered by defendant fails to create a question of fact to rebut the presumption of validity attached to the factual basis for the original judgment which is essential to the granting of a hearing. (People v. Richetti, supra; People v. Wurzler, 280 App. Div. 1020.)
*453 An additional ground for denying the application without a hearing is the failure of the defendant to substantiate by facts his claim that the prosecutor suborned perjury. There is nothing in the petition except his bare conclusory assertion that the prosecutor had possessed any knowledge either of the facts as to which the perjury had allegedly been committed or that the witnesses were perjuring themselves. (People v. Oddo, 300 N. Y. 649; People v. Rupoli, 1 N Y 2d 780; People v. White, supra.)
In People v. Fanning (300 N. Y. 593) the defendant had been convicted of robbery upon identification by four witnesses. Upon his application for a writ of error coram nobis to vacate his conviction on the ground that it was based on perjured evidence, he submitted, among other things, affidavits by two of the identifying witnesses stating that he had not been present at the scene of the crime. Clearly if this was true these witnesses gave perjured testimony at the trial. The court held, however, that since the petition did not sufficiently allege fraudulent use of perjured testimony by the prosecutor the petitioner was not entitled to a hearing.
See, also, People v. Altruda (5 N Y 2d 970) where the court denied, without a hearing, a similar application in which defendant claimed Ms conviction had been obtained on perjured testimony knowingly used by the District Attorney.
There is no probative factual support for defendant’s claim that the witnesses Traver and Slocum committed perjury or that the prosecutor knowingly used perjured testimony and this court is convinced on the record that there is no reasonable probability at all that defendant’s averments are true. Accordingly, the application is denied without a hearing.