OPINION OF THE COURT
Meyer, J.
A defendant found to lack capacity to participate in his own defense and committed for care and treatment, who is thereafter determined by the superintendent of the institution to which committed to be no longer incapacitated, has the right to present expert testimony during the hearing held pursuant to CPL 730.30 (2) following the superintendent’s report. Nothing in CPL 730.30 (2) or 730.60 (2) authorizes the hearing court to refuse to hear expert testimony other than that of the psychiatrist in charge of defendant during his confinement, nor is it material that defendant himself opposes the demand of his attorneys for such a hearing. The order of the Appellate Division should, therefore, be reversed and the matter remitted to Supreme Court, Erie County, for a new hearing to ascertain defendant’s capacity to assist in his own defense and, if he is found to have such capacity, for a new trial on all three counts of murder in the second degree of which he was convicted.
I
Defendant was convicted after a bench trial of murdering three black males in the 26-hour period between 10:00 p.m. on *421 September 22,1980 and midnight on September 23,1980 on the east side of Buffalo. His conviction has been affirmed by the Appellate Division in a thorough and thoughtful opinion (101 AD2d 504), to which reference is made as to the facts of the killings, the pretrial proceedings and the claimed trial errors. We agree with the conclusions reached in that opinion other than (1) its holding that the hearing judge did not err in refusing to allow introduction by the defense of expert testimony at the second (March 16, 1982) hearing concerning defendant’s capacity to assist in his own defense, and (2) its reasoning as to the sufficiency of the evidence concerning the second (Green) and third (Thomas) murders.
II
Much of the problem with respect to defendant’s right to introduce psychiatric testimony at the second hearing stems from the fact that defendant himself opposed his attorneys’ efforts to have a hearing at all, it being his view that there was no question about his capacity to participate in his defense. Whatever may be the right of a criminal defendant represented by counsel to make the ultimate determination of trial strategy (cf. Dearinger v United States, 344 F2d 309 [defendant entitled to insist, against counsel’s advice, that particular witnesses be called]), it does not include the right to waive a hearing concerning capacity which counsel has requested. This necessarily follows from the self-contradiction involved in recognizing that a defendant whose capacity is in issue has the capacity to waive a hearing concerning his capacity (Pate v Robinson, 383 US 375, 384).[1]
Here, the hearing judge, after the first hearing during which the reporting psychiatrists disagreed concerning defendant’s ability to participate in his defense, found him incapacitated and on December 16, 1981, committed him to the Mid-Hudson Psychiatric Center for treatment and care. On February 23, 1982, the superintendent of that institution certified that defendant was no longer incapacitated. Defendant’s attorneys then moved for a hearing, and a prehearing conference made clear that what they sought was not an order of examination pursuant to CPL 730.30 (1) but the appointment of psychiatrists to assist in the *422 defense, to testify at the hearing and to help prepare the cross-examination. The hearing judge denied the application, stating that what counsel sought was the same hearing previously held and that he would hear only the psychiatrists whose opinions underlay the superintendent’s report.
Counsel demurred to the latter suggestion and stated that formal application would follow. That application, made on the affidavit of one of defendant’s attorneys which called attention to testimony at the first hearing concerning defendant’s inflexibility in his inability to cooperate with counsel, recited that in discussion since defendant’s return to Buffalo the same intransigence continued,[2] asked in view of defendant’s indigency for authority to obtain the services of psychiatrists as experts for the assistance of the defense and emphasized the due process and other constitutional violations that would otherwise result. It was accompanied by a proposed form of order which made specific reference to County Law § 722-c, which provides for the furnishing of services of others than attorneys for indigent defendants. At the argument of that motion the defendant objected to a hearing, as did the prosecutor. The judge resolved the dilemma by ordering the hearing on his own motion, but reserved decision on the request of defendant’s attorneys for appointment of psychiatrists until conclusion of the testimony of the Mid-Hudson psychiatrist who has been in charge of defendant after he was committed there for care and treatment.
After conclusion of that testimony, the motion for appointment of psychiatrists was denied, the judge stating again that he construed the application as one for further examination under CPL 730.30 (1). Defense counsel then offered to pay the psychiatrists from their own funds, but the judge ruled that to be no more than a backdoor approach to a third round of psychiatric tests. That interpretation and ruling were reiterated on the next hearing date. The judge’s ultimate decision, that the defendant *423 was not an incapacitated person and that the criminal trial should proceed, was, therefore, made without hearing any psychiatric evidence from the defense.
The Appellate Division held that there nevertheless was no denial of due process because the hearing having been held on the court’s own motion, limitation of expert testimony produced at the hearing was reasonable; because CPL 730.60 (2) does not mandate a full adversary hearing; because it interpreted the last sentence of CPL 730.30 (2) to provide for a limited initial hearing followed by a further hearing at which other psychiatrists would be allowed to testify; because defense counsel had the opportunity to cross-examine the Mid-Hudson doctor; and because the court in reaching its second hearing decision considered the testimony of the three psychiatrists who testified on behalf of defendant at the first hearing.
That reasoning, and the reasons given by the hearing judge for denying defense counsel’s request, misconstrue the governing statutes.[3] CPL 730.60 (2) provides that when the superintendent of the institution in which defendant is confined determines that defendant is no longer an incapacitated person he must so notify the court and the District Attorney in writing, and that: “The court must thereupon proceed in accordance with the provisions of subdivision two of section 730.30 of this chapter; provided, however, if the court is satisfied that the defendant remains an incapacitated person, and upon consent of all parties, the court may order the return of the defendant to the institution in which he had been confined for such period of time as was authorized by the prior order of commitment or order of retention.” CPL 730.30 (2), which deals with an order of examination as to capacity before an order of commitment issues (see, CPL 730.40, 730.50), provides that: “When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney. If no motion for a hearing is made, the criminal action against the defendant must proceed. If, following a hearing, the court is satisfied that the defendant is not an incapacitated person, the criminal action against him must proceed; if the court is not so satisfied, it must issue a further order of examination directing that the defendant be examined by different *424 psychiatric examiners designated by the director.” But, if the Appellate Division’s construction of the concluding clause of that provision is correct, not only a defendant returned for a second hearing after prior commitment for observation, but also a defendant whose capacity is first put in issue, would have no right in the initial hearing held pursuant to the section to present psychiatric testimony on his own behalf. He could do so only after the court, not being satisfied following the initial hearing that defendant is not incapacitated, ordered additional examination by psychiatric examiners designated by the director, which would be an absurd result. It would also be wholly inconsistent with the wording of the statute which provides in its first sentence that the court “must conduct a hearing upon motion therefor by defendant” (emphasis supplied), and with the memorandum of the Senator who sponsored the 1981 amendment which added to CPL 730.60 (2) the sentence quoted above. That memorandum stated flatly that: “This bill ensures that the court, the district attorney and the defendant retain the right to contest the determination of the department.” (1981 NY Legis Ann, at 423, 424 [emphasis supplied]). To say that defendant is ensured the right to a hearing and to contest a psychiatric determination but may not present psychiatric testimony is a contradiction in terms.[4]
Moreover, the statutory requirement was not met by the hearing judge’s review of the testimony of psychiatrists who testified at the initial hearing. That testimony, the judge found, was insufficient to establish defendant’s competence to stand trial but, in any event, the issue on the second hearing was defendant’s capacity at that time, not several months before. Had defendant been permitted to present psychiatric testimony, it may have varied from that of the Mid-Hudson psychiatrist eyen more drastically than had been the difference between them on the first hearing.
It is, furthermore, the People’s.burden to establish defendant’s coippetence to proceed (People v Santos, 43 AD2d 73; see, People *425 v Silver, 33 AD2d 475). If the proof submitted through the Mid-Hudson psychiatrist be deemed sufficient to shift the burden of going forward on that issue to defendant, still as Chief Judge Cardozo (as he then was) observed in Matter of Reilly v Berry (250 NY 456, 461), “a defendant may be at an unfair disadvantage if he is unable * * * to parry by his own witnesses the thrusts of those against him.” Nothing in the statutory reference to a “hearing,” or in its provision for a hearing on the court’s own motion, suggests that defendant was to be disadvantaged at that juncture by being denied the assistance of a psychiatrist. As we have noted in People v Richetti (302 NY 290, 297), “A ‘hearing’ or ‘trial’ of * * * an issue of fact is an empty form unless it takes place * * * with the right, on each side, to examine and cross-examine.”
No more so is there basis in the statute or in the record for the hearing judge’s denomination of the motion made by defendant’s counsel, who clearly and repeatedly argued that they sought only the assistance of expert psychiatrists and ultimately offered to pay the costs involved themselves, as one for a third round of psychiatric examination.[5] Nor is it material that there was an adjournment between hearing and trial during which counsel might have consulted and retained expert assistance at their own expense for by that time the hearing judge had ruled that he would neither appoint psychiatrists at court expense nor hear psychiatrists retained at defendant’s attorneys’ expense.
Nor finally can it avail the People, as they argue, that the evidence before the hearing judge was legally sufficient or that the introduction of expert testimony is generally a matter of the court’s discretion. How many experts will be heard will in most circumstances be a matter of discretion, but, as already noted, th^ refusal to hear any expert witness on behalf of defendant is a violation of the statutory requirement, not a matter of discretion. And the statutory right to oppose the testimony presented against him having been violated, it is simply irrelevant that the unopposed testimony was legally sufficient. The issue is not whether the People presented enough evidence but whether defendant was prevented from contesting as the statute ensured; under the statute defendant’s right to present evidence in opposition is not subject to the unfettered discretion of the hearing judge._
*426 Because the psychiatric assistance that can be provided at a new hearing will relate to defendant’s present condition, rather than his capacity at the time of the second hearing held without such assistance, a new hearing will not provide him with the safeguards he was entitled to at the time of the second hearing (cf. People v Hudson, 19 NY2d 137,140). There must, therefore, be a reversal and a remand for a new hearing as to defendant’s present capacity, followed, if he is found capable to proceed, by a new trial (Dusky v United States, 362 US 402).
Ill
Whether that new trial, if it occurs, will be only as to the Dunn murder or as to the Green and Thomas murders as well turns on the legal sufficiency of the evidence presented as to the latter two. Defendant attacks the legal sufficiency of the evidence as to them on a number of bases. He argues first that the testimony of Robert Oddo, who identified defendant as the perpetrator of the Dunn murder, was inconclusive and, therefore, an insufficient predicate as “other crime” evidence on the issue of identity under the Molineux rule (People v Molineux, 168 NY 264), because Oddo did not identify defendant at the lineup, testifying at the trial that initially he did not want to get involved. The argument cannot help defendant, however, for he was identified not only by Oddo but by Madonna Gorney as well, who passed within an arm’s length of him just prior to the Dunn murder and positively identified him at the trial.
Defendant contends also that the Trial Judge committed himself, without objection from the prosecution, to render a verdict on each count separately and weigh and assess the evidence as it applied to each count separately and that it was, therefore, impermissible for the Appellate Division to use the Dunn “other crime” evidence to identify defendant as the perpetrator of the other two murders. The Trial Judge’s statement was related to defendant’s counsel’s objection to the prosecutor’s theory that the crimes were connected because all the victims were black, and the impropriety of using guilt of one crime to establish guilt of another. It cannot properly be read, however, as a commitment not to consider evidence properly admissible on the issue of identity under the Molineux rule (see, People v Beam, 57 NY2d 241; People v Allweiss, 48 NY2d 40). Here there is more than the race of the victims to make the evidence probative of identity: the short space of time in which the three murders occurred, the unprovoked nature of each, the facts that they occurred in the same general geographical area, that the same type of weapon was involved in each and that defendant owned such a weapon.
*427 Moreover, the expert testimony, based on the shell casings found at each murder site and at other places frequented by defendant, that the same gun was used in all three killings, considered together with the “other crime” identity evidence and defendant’s admissions that he had killed many people in Buffalo, some using a .22 caliber weapon, constituted sufficient evidence to present a jury issue with respect to the other two murders.
For the foregoing reasons, the order of the Appellate Division should be reversed and the matter remitted to Supreme Court, Erie County, for further proceedings in accordance with this opinion.

. Pate held the defense of incompetence to stand trial not waived by defendant, noting that “it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently ‘waive’ his right to have the court determine his capacity to stand trial” (383 US, at p 384) and that “[w]hile Robinson’s demeanor at trial might be relevant to the ultimate decision * * * it cannot be relied upon to dispense with a hearing” (383 US, at p 386).

. What the dissent characterizes as “conclusory assertions that defendant failed to cooperate” (dissenting opn, at p 428) is contained in paragraph 8 of the affidavit, which reads: “I have spent in excess of four hours with Mr. Christopher since his return to Buffalo. During that time I have concluded that he is still unable to assist effectively in his defense because of his refusal to discuss important areas of his case, such as trial strategy, the raising of defenses, such as, for example, lack of criminal responsibility, and possible approaches to the anticipated proof at trial. In one conversation with him, regarding two important areas of evidence expected from the prosecution, and conflicting strategies for responding to same evidence, the defendant merely states ‘I’ll take care of that'f or ‘leave that up to me.’ When pressed on the need to cooperate with defense counsel, Mr. Christopher states ‘I’m going to make my own decisions’ ’’ (Emphasis supplied.)

. Because our reversal stems from those statutes, we do not reach or decide the constitutional issues argued by defendant.

. The dissent’s reference to the last sentence of subdivision 2 (dissenting opn, at p 432) ignores the wording of the first sentence of that subdivision. Its contrary construction of the subdivision (dissenting opn, at p 432) also ignores the above-quoted underscored language of the legislative memorandum. Even if the one-sided proceedings which the dissent would accept as sufficient be deemed a “hearing” (but see, People v Richetti, 302 NY 290, 297), it does not afford defendant “the right to contest the determination of the department” which the legislative history shows to have been intended. Moreover, that CPL 730.10 (8) specifies what the examiner’s report shall contain (dissenting opn, at p 434) proves nothing contrary to defendant’s right to contest that report at a hearing.

. Though defendant’s original application was for funds to pay the four psychiatrists who testified at the first hearing, our holding is that the Trial Judge erred in refusing to hear any psychiatric evidence on defendant’s behalf, not that defendant had a statutory right to present the evidence of four psychiatrists at the second hearing.