David L. Malbih, J.
This is a motion in the nature of a coram nobis to vacate a judgment dated May 28, 1964, which convicted defendant on his own plea of guilty to the crime of manslaughter in the second degree, unarmed. He was thereupon sentenced to Sing Sing Prison for a term of 7% to 15 years.
The defendant-petitioner was jointly indicted on October 31, 1963, with three other codefendants, for the crime of murder in the first degree. The judgment of conviction was unanimously affirmed on November 15, 1965 (24 A D 2d 885) and leave to *452 appeal to the Court of Appeals was denied on March 9,1966, by Judge Fuld.
It is claimed that the above-named defendant pleaded guilty during his trial because of pressure and coercion exercised upon him by a co-counsel (now deceased) and a Catholic priest. The act of coercion is alleged to have resided in the fact that defendant was told by the deceased attorney for a codefendant that if he did not plead guilty ‘ he would go to the electric chair ’ ’ and also that the District Attorney ‘ ‘ was offering a chance of not dying by offering to this defendant a chance to plead guilty to a reduced charge of manslaughter in the second degree, together with a sentence not to exceed five years.” It is further contended that the court overruled objections to an alleged confession imputed to the defendant in which he confessed to Ms inculpatory participation in the crime; that he was not made aware of his constitutional rights at the time of his arrest and that the confession was the product of 36 hours of questioning.
This defendant and his confederates were represented by a distinguished array of counsel; the above-named defendant, Moises Ortiz, and his codefendant (brother) Carlos Ortiz, by Oscar G. Suarez, Esq.; codefendant Francisco Yega, by Edward H. Levine, Esq. (deceased), and Myron Beldock, Esq.; codefendant George Nieves, by Abraham Brodsky, Esq. and Robert Helfand, Esq. A trial was held commencing on March 2, 1964, and at the request of the respective attorneys representing the four defendants, the trial was interrupted on March 19, 1964, at which time in open court each defendant in person and through his respective attorney sought permission to withdraw his plea of not guilty to the crime of murder in the first degree- as charged in the indictment, and with the approval of the District Attorney were permitted to plead guilty to a degraded degree of the crime. A thorough period of interrogation was conducted by the court at which this defendant and his codefendants freely admitted to their participation in the attack which led to the death of the victim (see Minutes of Plea, March 19, 1964). The undisputed record and documentary proof clearly indicate that each defendant was represented by his counsel who made the plea in behalf of his respective client. The court accepted the pleas of manslaughter in the second degree, unarmed, as to the defendants Carlos Ortiz, Moisés Ortiz and Francisco Yega, and permitted the defendant George Nieves to plead to manslaughter in the first degree.
On May 28, 1964, the four defendants were each asked if he had anything to say why the judgment should not be pronounced against him. A transcript of the minutes of the plea shows that *453 the said defendant-petitioner discussed the question of taking the plea with his attorney and that it was after consulting with his counsel that he pleaded guilty of his own free will.
The following colloquy took place at the time the defendant was sentenced:
mb. suarez : “ The defendant would like to address himself to the court, Tour Honor.”
(The defendant through the interpreter spoke as follows:)
the interpreter : “I would like the judge to have consideration. I am the father of a family with four children. These are things that happen. I ask for consideration of the court.”
The minutes, during and after the sentence, failed to disclose any complaint of any nature whatsoever. The trial record contained about 1,200 pages of testimony up to the time that a conference was requested by the defense. A reading of the minutes unquestionably demonstrates that the defendant-petitioner’s plea to a lesser degree of crime charged in the indictment was the result of the accused’s desire to avoid any possibility of a verdict by the jury of murder in the first degree. The choice to plead to a lesser degree of homicide, or to continue with the trial on the crime charged in the indictment, was for the defendant to make. The record clearly indicates the plea was offered of his own free will. The acceptance of the plea was proper. (People v. Sadness, 300 N. Y. 69; People v. Pechota, 209 App. Div. 164.) The evidence offered by the prosecution apparently was the prime factor that convinced the defendant-petitioner as well as his confederates to avail themselves of the opportunity to plead guilty to the crime of manslaughter. There was no misunderstanding as to the plea of guilty. (People v. Herzka, 119 N. Y. S. 2d 176; People v. Gowasky, 244 N. Y. 451, 465; People v. Wallack, 269 App. Div. 888, 889.) The plea of guilty to the crime of manslaughter in the second degree was of the same effect as a verdict of conviction by a jury. (People v. Krennen, 264 N. Y. 108.) “ A plea of guilty to an indictment, if accepted and entered of record, unless withdrawn with the consent of the court, is conclusive of the defendant’s guilt. Upon such a plea there is nothing for the court to do but to pronounce sentence.” (People ex rel. Evans v. McEwen, 67 How. Prac. 105; Richardson, Evidence [8th ed.], § 343, p. 313.)
The petition contained many unfounded, baseless and wild statements accusing a former distinguished member of the Bar and a Catholic priest of coercion and exercising pressure upon this defendant and thus causing him to plead guilty. The record indicates the opposite and this accusation is a desperate attack upon two reputable persons of great character and integrity. *454 It is significant that no protest was made at the time of sentence and it was long after the defendant’s incarceration that he ‘ became a member of the coram nobis clearing house ” and received a copy of the “ pro-se pro-forma ” easy and accessible stereotyped petitions used as the vehicle to apply for a writ of coram nobis. Of course, there are many instances where there have been presented to this court many applications for a hearing and they were well founded and contained a meritorious factual basis where the records in those cases indicated sufficient earnest good faith had justified a hearing. (People v. Russell, 15 N Y 2d 657; People v. Scott, 10 N Y 2d 380.)
In the case at bar, the defendant-petitioner Ortiz accuses the deceased attorney for a codefendant. He makes no assertion or claim as to his own attorney who is an experienced and distinguished trial counsel for over 45 years. Surely his own attorney would have been apprised of the fact if any promise were made or if any coercive tactics were employed upon his client.
The record demonstrates that all the attorneys for the defendants conferred. It was after this consultation that the discussions took place that culminated in the respective defendants’ pleading guilty to a lower degree of the crime charged. It is not too difficult to conclude that the defendant-petitioner directed his accusation to the late Edward H. Levine, Esq. because the defendant was prompted by the knowledge that no denial could be obtained from this deceased attorney. Mr. Suarez, who was the defendant-petitioner’s attorney, was present during the conference with the co-counsel during the trial and at all stages during the intermediate proceedings, including the time that the plea was taken and the sentence was imposed.
There is lacking any affidavit from the defendant-petitioner’s counsel, who was available, and the petition contains no averment explaining the failure to submit a supporting affidavit. The defendant did not obtain nor apparently seek to obtain an affidavit from his trial attorney in support of his alleged claims, but conveniently preferred to name the source of his information from the attorney whose lips are now sealed. The remedy of coram nobis is not available to the petitioner. The charge is lacking factual support; the defendant is not entitled to a hearing. (People v. Kniseley, 13 N Y 2d 779; People v. Diblin, 11 N Y 2d 676.) The plea of guilty was accepted upon the defendant’s free and voluntary statements admitting the commission of the crime.
A confession under the surveillance of the Trial Judge in open court is the most reliable form of a confession that can be received against the accused. This is for the obvious reason *455 that no innocent man in full possession of his faculties can he supposed ordinarily to be willing to risk his life, liberty or property voluntarily by a false confession. (Richardson, Evidence [9th ed. by Prince], § 349, p. 335; People v. Bennett, 37 N. Y. 117; People v. Joyce, 233 N. Y. 61.) The objections raised to the admission of the confession in evidence are untenable and without merit. His attorney strenuously objected to the admission of the statements and properly protected the defendant’s rights. However, in People v. Howard (12 N Y 2d 65) the court held that coram nobis was not available to the defendant even though his attorney could have objected to the alleged coerced statements, but failed to do so. It has been established that the question of voluntariness of a confession is not a proper basis to warrant a hearing. “ If a defendant desires to contest the voluntariness of his confession, he must do so by pleading not guilty and then raising the point upon the trial ”. (People v. Nicholson, 11 N Y 2d 1067,1068; People v. Fish, 11 N Y 2d 1069; People v. Dash, 16 N Y 2d 493; People v. De Flumer, 16 N Y 2d 20.) It cannot thereafter be remedied under an application for a writ of error coram nobis. (People v. Howard, supra.)
The foregoing claims are not within the orbit for coram nobis relief. (People v. Fairfield, 16 A D 2d 992; People v. Sullivan, 3 N Y 2d 196; People v. Wurzler, 278 App. Div. 608.) The contentions that the plea of guilty was made as a result of the court’s adverse rulings on the admissibility of the alleged coerced confessions, and that because of such introduction thereof, the defendant was subjected to pressure to change his plea constitute no legal basis to grant a writ of error coram nobis, and do not entitle defendant to a hearing. (People v. Jones, 11 N Y 2d 1070.)
The defendant-petitioner subtly complains that he was advised by his counsel to plead guilty. It has been long held that the advice of counsel, if mistaken in opinion, is not proper grounds for relief. There is denial of effective representation of counsel only where representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it.” (People v. Tomaselli, 7 N Y 2d 350, 356; People v. Brown, 7 N Y 2d 359, cert. den. 365 U. S. 821.) Strong language by counsel without undue pressure by the court or District Attorney is not the proper basis for a coram nobis hearing. (People v. McCants, 12 N Y 2d 798.) As a matter of fact, this defendant, as well as his codefendants, was most fortunate that their able and highly regarded counsel displayed exceptional zeal and devotion to their clients’ cause; obviously this objection is without merit. None of the contentions urged *456 thus far treated hy the court has raised any issue for trial that would warrant a hearing. (People v. Picciotti, 4 N Y 2d 340.)
Judge Fuld of the Court of Appeals in People v. Howard (supra, p. 66), stated in clear and concise language: “As an abstract matter, there are few who would dispute the proposition that it is highly desirable that the law provide corrective process at any time for any substantial defect * * * an application in the nature of a writ of error coram nobis is to be treated as an emergency measure horn of necessity to afford a defendant a remedy against injustice when no other avenue of judicial relief is, or ever was, available to him. (See, e.g., People v. Sullivan, 3 N Y 2d 196, 198.) ” No factual support has been submitted that could in the slightest degree add to the baseless claim of defendant-petitioner. Fundamental fairness requires the court to safeguard and preserve every right accorded to the accused ; however, the acceptance of this concept would be meaningless if construed to justify a hearing in every application that lacks any substantial basis in law or logic.
It seems that the import of the opinion in the Howard case carries a message that those seeking a hearing to correct a serious wrong should not be encouraged to make irresponsible charges and to use the means thus employed as a platform to malign anyone for the purpose of obtaining their goal. There is an enormous number of applications for writs of error coram nobis presented to the courts. Unquestionably, many are predicated on substantial grounds. However, ever too often there are many petitions, as is here present, when there is no justification set forth by the defendant.
The petitioner has also contended that his constitutional rights were violated. That claim is without merit. The petitioner refers to the period of his questioning in the police station. Specifically, he claims that he was not advised of his right to the aid of counsel, nor of his privilege to remain silent and to avail himself of his privilege against self incrimination (U. S. Const., 5th and 6th Arndts.) The court is cognizant of the fact that presently there are many conflicting views throughout the various States and jurisdictions on the issue which concerns the failure to warn a defendant of his constitutional rights, to the aid of counsel and to the privilege to remain silent, even though no request for compliance with these rights was made by the accused. However, it is the law of this State that where no request was made for the aid of counsel or no inquiry was initiated by the defendant, there is no mandatory obligation to warn an accused of his right to counsel or the right to refrain from making a statement after Ms arrest; and consequently, *457 the omission to so make the accused aware of these constitutional guarantees was no deprivation of the defendant’s substantial rights. (People v. Hill, 17 N Y 2d 185, 189; People v. Gunner, 15 N Y 2d 226; People v. Dusablon, 16 N Y 2d 9, 19; People v. Green, 23 A D 2d 500; People v. Agar, 44 Misc 2d 396; People v. Langert, 44 Misc 2d 399; People v. Hocking, 15 N Y 2d 973; People v. Livingston, 15 N Y 2d 977; People v. Jackson, 46 Misc 2d 742, 751-754.)
A transcript of the minutes of the trial and of all the proceedings, including the taking of the plea, refutes any assertions made by the defendant-petitioner. The documentary proof irrefutably indicates that the defendant is not entitled to a hearing. “ Charges made in coram nobis are subject to the criteria relied upon in all causes to determine where the truth lies. Bare allegations not confirmed by the recorded facts and contrary to the conduct of the defendant and his attorney, are insufficient in law to warrant the granting of a hearing. The defendant is not entitled to a hearing on charges lacking factual support. Due process does not require a court to accept every sworn allegation as true. Many sworn allegations are palpably untrue, not improbable or unbelievable, but untrue.” (People v. White, 309 N. Y. 636, 640-641; Taylor v. Alabama, 335 U. S. 252; Foster v. Illinois, 332 U. S. 134.)
The defendant’s version of the proceedings does not raise an issue entitling him to a hearing (Matter of Lyons v. Goldstein, 290 N. Y. 19). It has been stated in People v. Guariglia (303 N. Y. 338, 343): “ It is only when the record conclusively demonstrates the falsity of the allegations and there is no reasonable probability at all that defendant’s averments are true that a hearing will be denied (People v. Richetti, [302 N. Y. 290] ; Hysler v. Florida, 315 U. S. 411; Taylor v. Alabama, [supra]; New York ex rel. Whitman v. Wilson, 318 U. S. 668; Matter of Morhous v. New York Supreme Court, 293 N. Y. 131; see, also, Waley v. Johnston, 316 U. S. 101 and Walker v. Johnston, 312 U. S. 275, which deal with habeas corpus, but apply the same ruling).”
The court has given careful consideration and deliberation to all of the facts and circumstances surrounding the offer and acceptance of the plea which is the subject matter of this application. It has also read the entire testimony taken during the trial in addition to the affidavit submitted by the defendant-petitioner and concludes that the petition and affidavits raise no issue of fact requiring a hearing. (People v. Vellucci, 13 N Y 2d 665.)
*458 Since the opinion written by Judge Fuld of the Court of Appeals in 1962 and in view of the flow of an abundant number of writs of error coram nobis containing baseless and unjustified attacks in the hope of getting a hearing, which writs are really born out of desparation and not “ an emergency measure born of necessity ” it may be appropriate at this time to refer to the following in People v. Howard (supra, p. 66): “ There is, on the other hand, an unmistakable social value in putting an end to litigation at some point and there is, as well, an unmistakable social burden in affording unending corrective process for any defect. It was in an attempt to resolve these opposing interests that this court concluded that an application in the nature of a writ of error coram nobis is to be treated as an emergency measure born of necessity ’ ’. It is, therefore, obvious that it was the intention of the Court of Appeals to afford an opportunity for a remedy to a person who has been deprived of a substantial right. The problem to be determined is whether or not on the allegations here presented, is the writ of error coram nobis available to the petitioner herein? It is the court’s opinion that the application presents no reliable, nor any sufficient facts that could by the most liberal construction justify a hearing. Substantially the same contentions that are now made to this court were presented to the appellate tribunal, and, as herein-before indicated, were not accepted on the review from the judgment of conviction. In any event, the court opines that the defendant-petitioner has not made out a proper case for coram nobis; that he has failed to sustain the burden, and accordingly the motion is in all respects denied. Submit order in accordance with the foregoing decision. The District Attorney is directed to serve a copy of said order with notice of entry and with a copy of the accompanying decision upon the defendant at the place in which he is presently incarcerated, and also to his attorney.